THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH OKOPSKE, Plaintiff in Error.

*Opinion filed April 23, 1926.*

1. CRIMINAL LAW—*what is sufficient to prove prosecutrix was not wife of defendant.* An allegation that the prosecutrix was not the wife of the defendant is material and necessary in an indictment charging statutory rape, and in the absence of contrary proof is sufficiently proved by direct testimony of the mother of the prosecutrix that the prosecutrix was not married, and by testimony of the girl herself that she was fourteen years of age, resided with her parents and attended school.

2. SAME—*what is not a confession.* A confession implies that the matter confessed constitutes a crime, and an acknowledgment of facts merely tending to establish guilt is not a confession but only an incriminating admission, which may be made without any intention to confess guilt or intended to be exculpatory.

3. SAME—*preliminary proof of voluntary character of exculpatory statements is not necessary.* As alleged admissions which are, in fact, exculpatory and made in a denial of guilt cannot amount to a confession, preliminary proof of their voluntary character is not necessary for their admission in evidence.

4. SAME—*what does not warrant exclusion of the testimony of character witnesses.* The fact that character witnesses for the defendant in a prosecution for statutory rape testify that they have never discussed the defendant's reputation with anyone does not warrant the exclusion of their testimony that his general reputation was good, as negative evidence is receivable to establish a good reputation.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. TIMOTHY D. HURLEY, Judge, presiding.

JOHN PRYSTALSKI, and PETER H. SCHWABA, (JOHN OWEN, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Joseph Okopske was indicted at the March, 1925, term of the criminal court of Cook county for the rape of Genevieve Petrey. A jury trial resulted in a verdict finding him guilty and fixing his punishment at ten years in the penitentiary. Motions for a new trial and in arrest of judgment were made and overruled and judgment was rendered and sentence imposed. He seeks a review by this writ of error.

Okopske was a widower, fifty-five years of age. He had three children, Victoria, Stella and Simon, respectively seventeen, thirteen and eleven years of age, and resided with them in the basement of a flat-building at 2936 South Throop street, in the city of Chicago. He was the owner of the property. Genevieve Petrey, the prosecutrix, fourteen years of age, lived with her parents and brother on the third floor of the same building. Her sister, Margaret Moore, lived on. the second floor with her husband and two children. Genevieve often visited Stella Okopske and occasionally assisted her in doing the housework.

The prosecutrix testified substantially as follows: On the morning of February 4, 1925, shortly after 8:30 o'clock, she started for school. When she reached the bottom of the rear stairway she stopped to ascertain whether Victoria, Okopske's older daughter, who had been ill the evening be-

321—3

fore as the result of a vaccination, was going to work. She rapped on the door, and, no one responding, turned to leave, when she met Okopske and inquired of him whether Victoria was at home. He answered that he did not know but invited her to enter and ascertain whether his daughter was present. Upon looking about the rooms the prosecutrix failed to find Victoria and so informed Okopske. She then remarked that she would have to hurry on to school or be late. Okopske replied, "Don't go to school; you are late now; if you go now your mother will see you go and she will wonder what has kept you so long," and he would not permit her to leave. She then did certain housework for him, after which he put her on a couch and ravished her. Protesting, she stated she would tell her father, to which he replied that he would shoot her if she did. She read a book the rest of the forenoon and then returned to her home up-stairs. In the evening her mother upbraided Okopske for permitting the prosecutrix to remain in his home during the forenoon, and when her mother slapped her in his presence, he remarked that she, the mother, should not have done so because it was his fault. Over objection the prosecutrix was permitted to testify to other acts of intercourse, one in November of the previous year, another about a month later, and a third still later. The prosecutrix testified that she made no outcry, and that although her mother knew that she had visited Okopske's home on the morning of the 4th of February she did not inform her what happened until two days later.

Dr. Daniel E. Meaney examined Miss Petrey on the 6th or 7th of February. He testified that in his opinion the vaginal opening had been penetrated, although there was no raw surface or indication of recent tearing and that he found no infection. Margaret Moore testified that the prosecutrix was not married. Ellen T. Hessell, the police officer who arrested Okopske, testified that in answering certain questions he admitted that the prosecutrix

had been in his home; that he had patted her on the shoulder and embraced her; that on several occasions he had given her small sums of money to attend shows and amusements but denied that he had committed the offense charged.

On the defense, Stella Okopske testified that she came home from school, which was a half-block distant, at recess, about ten o'clock in the forenoon on the 4th day of February; that she unlocked the door, entered and found her father asleep, and there was no other person in the house; that she went back to school and returned home again at half-past eleven o'clock and found her father still asleep; that she woke him and they had lunch, and that he went to work in the afternoon. Simon. Okopske testified that he accompanied his sister Stella home from school twice during the forenoon of the day in question; that he found his father asleep, and that there was no other person in their home at either hour.

Okopske, the plaintiff in error, denied that he was guilty of the charge made against him. He admitted that the prosecutrix called at his home on the morning of the 4th day of February and that he asked her why she did not go to school. She answered that she had no school that day. He then asked her if she would remain while he went to the butcher shop, and she assented. Upon his return he told her that she might go or stay, as she desired, for she was often present in his home. He retired to sleep and awoke at 11:30 o'clock, when his daughter returned from school. He then had lunch and went to work. He admitted that he had given the prosecutrix five dollars at Christmas, but said that it was done because her parents had made gifts to his children.

Anton Nowecki testified that he conducted a grocery store about five doors from Okopske's home; that he had seen him two or three times a day for four years; that he knew his general reputation for chastity in the neighbor-

hood of his residence prior to the indictment and that it was good. On cross-examination the witness admitted that he had not discussed that reputation with anybody, and on motion of the State's attorney the testimony was stricken and the jury was instructed to disregard it. The plaintiff in error then tendered nine witnesses, among them his employer for nearly ten years, all of whom were ready to testify that they knew Okopske's general reputation for chastity in his neighborhood before he was indicted on the instant charge and that that reputation was good. None of these witnesses, it was admitted, had discussed Okopske's reputation with any person, and on objection by the State the trial court refused to permit them to testify.

Numerous errors are assigned but only four questions are argued. They are, (1) that there is no evidence to support the necessary allegation that the parties were not married to each other; (2) that the trial court erred in admitting the testimony of the police officer without a preliminary examination concerning its admissibility; (3) that the testimony of the character witnesses was erroneously excluded; and (4) that there is, on the evidence, a reasonable doubt of the guilt of the plaintiff in error.

It is alleged in the second count of the indictment that the prosecutrix was not the wife of the plaintiff in error. Such an allegation in a count charging rape without force is material and necessary. (*People* v. *Kingcannon,* 276 Ill. 251; *People* v. *Stowers,* 254 id. 588.) The prosecutrix testified that her name was Genevieve Petrey, her age fourteen years, and that she resided with her parents and attended school. Her sister, Mrs. Moore, testified directly that the prosecutrix was not married. Nothing to the contrary was shown. The evidence was clearly sufficient to sustain the allegation of the indictment that Genevieve Petrey was not the wife of the plaintiff in error.

Preliminary proof of the voluntary character of the admissions to which the police officer testified, it is con-

tended, was necessary because those admissions amounted to a confession. Wigmore in his work on Evidence (2d ed. sec. 821) says: "A confession is an acknowledgment, in express words, by the accused in a criminal case, of the truth of the guilty fact charged or of some essential part of it." A confession implies that the matter confessed constitutes a crime. An acknowledgment of facts merely tending to establish guilt is not a confession but only an incriminating admission, which may be made without any intention to confess guilt. (*People* v. *Kircher*, 309 Ill. 500; *Michaels* v. *People*, 208 id. 603; *Johnson* v. *People*, 197 id. 48.) An exculpatory statement denying guilt cannot be a confession. (Wigmore on Evidence,—2d ed.—sec. 821.) The admissions which the officer testified the plaintiff in error made were exculpatory. Moreover, the officer also testified that the plaintiff in error denied that he had committed the offense charged. Hence the admissions did not constitute a confession and preliminary proof of their voluntary character was unnecessary. The testimony of the police officer was properly admitted.

The nine witnesses tendered by the plaintiff in error were ready to testify that they knew his general reputation for chastity in the neighborhood of his residence prior to his indictment and that it was good. These witnesses were not permitted to testify because they had not discussed that reputation. Evidence of the character here rejected was held competent in *Gifford* v. *People*, 148 Ill. 173. We said in that case: "Indeed, one whose word passes current among his associates and neighbors, or who is received and accepted by society as a virtuous man or woman, or whose honesty is not questioned in the community in which he lives, will ordinarily excite no discussion or comment, and yet every person in the community knows that he or she is accepted, recognized and reputed to be a truthful, virtuous or honest person." Upon an indictment for murder it was held in *People* v. *VanGaasbeck*, 189 N. Y. 408,

that negative evidence is receivable to establish a good reputation, and that the testimony of a person who lived for any considerable period in the same neighborhood as another, to the fact that he never heard anything against the other person in respect to his peaceableness or honesty, is competent evidence that his reputation is that of a person of pacific disposition and integrity. In *People* v. *Woods,* 206 Mich. 11, a witness who had testified that he knew the defendant's reputation and that it was good, admitted on cross-examination that he had "never heard anything said about his reputation one way or another." His testimony was stricken on that ground and the ruling was held to be erroneous. Supported by authorities in many jurisdictions, Wigmore (Evidence,—2d ed.—sec. 1614,) says: "Upon the same principle, the absence of utterances unfavorable to a person is a sufficient basis for predicating that the general opinion of him is favorable. A witness to good reputation may therefore testify by saying that he has never heard anything said against the person." It follows that the testimony of the nine witnesses offered by the plaintiff in error was competent and should have been received. The plaintiff in error was entitled to the jury's consideration of that testimony in connection with the evidence in the case. The evidence was in conflict, and it cannot be said that the jury would have found the plaintiff in error guilty regardless of whatever testimony might have been introduced to show his previous good reputation in respect to the trait involved in the charge against him. The exclusion of that testimony constitutes reversible error.

The remaining contention is that, upon the evidence, a reasonable doubt of the guilt of the plaintiff in error arises. The cause must be tried again and it is therefore unnecessary to consider that question.

The judgment is reversed and the cause is remanded to the criminal court of Cook county.

*Reversed and remanded.*