(No. 33496.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR MOWRY, Plaintiff in Error.

*Opinion filed May 20, 1955.*

ROBERT B. JOHNSTONE, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN C. FRIEDLAND, State's Attorney, of Geneva, (JOHN L. DAVIDSON, JR., FRED G. LEACH, and GEORGE W. SCHWANER, JR., of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

Arthur Mowry, the defendant, was indicted, tried and adjudged guilty in the circuit court of Kane County of the crime of receiving stolen property. The jury, in returning its verdict, found the value of the property to be between $700 and $750. Following unsuccessful motions for judgment notwithstanding the verdict, in arrest of judgment, and for a new trial, defendant was sentenced to the penitentiary for a term of not less than three nor more than six years. He prosecutes this writ of error to review such judgment on several grounds, the first of which is that the evidence is insufficient to sustain the conviction.

Looking to the record, the evidence discloses that between the hours of 1:00 P.M. and 8:00 P.M. on January 4, 1954, four shotguns and three rifles, all of a sporting variety, were stolen from a residence near Morton Grove in Cook County. Early on the morning of January 8, defendant, a resident of nearby Elgin, in Kane County, was arrested by the police of that city in connection with the theft. After having denied knowledge of the crime and of the whereabouts of the guns, defendant was taken to the city dump where, upon being advised that the entire premises would be searched, he pointed out a spot where the guns lay hidden, wrapped in a blanket. They were later identified through serial numbers as being the stolen guns.

Defendant was returned to the police station for further questioning and one officer present testified that defendant admitted he had purchased the guns from some unknown fellow "for around $150." Another officer testified that defendant, upon being asked where he had obtained the guns, replied that "they were put in his car by a man."

It appears without dispute that defendant was a close friend of one Marian Moore and was a frequent visitor at a one-room apartment she shared with Gloria McRoberts

Chomo, the latter also a long-time acquaintance of the defendant. When Gloria appeared as a witness for the prosecution, she testified that defendant was in the apartment several times during the night of January 4, both with and without Marian Moore. When describing one of the latter times, the witness stated that she entered the apartment to find defendant alone and that when she noticed "something long on the bed" covered with an overcoat, she was immediately warned by defendant to stay away from it. Later, after Marian Moore had returned and joined defendant, the witness was sent on an errand and when she returned the object on the bed was gone. Further testifying, Gloria related that Marian Moore then left the apartment with defendant and did not return until early the next morning, at which time she took from a clothes closet and exhibited to the witness, "seven long guns" which were wrapped in a bedspread taken from the apartment. Thereafter, according to the witness, the two women contacted her brother, Glenn McRoberts, who came with his car and removed the bundle containing the guns.

When Glenn McRoberts testified, he told of going to the apartment at approximately 7:00 A.M. on the morning of January 5 and of removing a package, described as being about four feet long and wrapped in a blanket, at the request of his sister. He stated, as he maintained with apparent difficulty throughout his testimony, that he had no knowledge of the contents. The witness related that he took the package to his home, placed it under his house and did not remove it until after dark, the evening of January 7; following which he drove to a midnight rendezvous at Sleepy Hollow and Ghost roads, where he placed the package in the trunk of an automobile occupied by Marian Moore and another person whom he was unable to distinguish because of the darkness.

Other evidence introduced by the prosecution consisted of the testimony of the owner and of a police officer who

stated that the total value of the seven guns was approximately $700 to $750. For the defendant, only one witness was called but he was immediately excused after answering preliminary questions of no probative value.

In attacking the sufficiency of the evidence, defendant first calls our attention to the case of *People* v. *Piszczek,* 404 Ill. 465, 470, where it is stated that to sustain a conviction of receiving stolen property, "the proof must show (1) that the property has, in fact, been stolen by a person other than the one charged with receiving it; (2) that the one charged with receiving it has actually received the property or aided in concealing it; (3) that the receiver knew the property was stolen at the time he received it, and (4) that he received the property for his own gain or to prevent the owner from again possessing it." Systematically adhering to this formula, defendant concedes that the proof here establishes the first element, but contends that there is no direct evidence, and thus a lack of proof beyond a reasonable doubt, to satisfactorily support the remaining three. In the *Piszczek case,* however, and in numerous decisions which preceded it, it is held that it is not necessary to prove that an accused receiver came into actual, manual possession of stolen property, but that constructive or potential possession is sufficient. (See: *People* v. *Poncher,* 358 Ill. 73; *People* v. *Jurek,* 357 Ill. 626.) In the instant case we have evidence of admissions by defendant both that the guns were placed in his car by an unknown person, and that he purchased them from an unknown man for $150. Without considering the inferences of possession in defendant which arise from the testimony of Gloria Chomo, the proof contained in the admissions clearly shows at least constructive possession in the defendant.

Similarly, this court has long recognized that the guilty knowledge and the intent to deprive the owner required to establish the crime are rarely susceptible of direct and

positive proof, and has held that such elements may be inferred from all the facts and circumstances, including the acts and declarations of the accused, the presumption being that whatever would convey knowledge or induce belief in the mind of a reasonable person that property was stolen, could, in the absence of countervailing evidence, be sufficient to apprise the accused of the like fact or to induce in his mind a like impression and belief. (*Huggins* v. *People*, 135 Ill. 243; *People* v. *Mulford*, 385 Ill. 48; *People* v. *Holtzman*, 1 Ill. 2d 562.) When the rule stated is applied to the record of this case, we are of the opinion that the proof, although largely circumstantial, is sufficient to establish with moral certainty both the guilty knowledge of the defendant and his intention of preventing the owner from again possessing the guns. Again to be considered are the conflicting exculpatory admissions of the defendant. Whether defendant bought the guns or whether they were put in his car by some person, it would appear that under either circumstance a prudent man would have been led to inquiry, yet defendant apparently made none. Neither did he report to authorities the peculiar circumstance of finding seven guns in his car, his actions showing, rather, that he dealt with the guns in such a manner as would preclude their discovery. Further, it can be said that the price at which defendant allegedly purchased the seven guns was sufficiently low to raise the suspicion of a reasonable man as to the validity of the vendor's ownership, particularly when the identity of the vendor was unknown. (*People* v. *Lanie*, 378 Ill. 320.) When such aspects of the defendant's explanations and conduct are added to the facts which show that the guns first appeared in the apartment of his lady friend on the night of the theft; that defendant warned the witness Chomo away from something he was concealing; and that the guns were handled with stealth and secrecy from the time they appeared in the apartment until the time defendant revealed to the police their hiding

place in the city dump, we are of the opinion that the jury and the court below were fully warranted in concluding that defendant knew the guns which had come into his possession were stolen property, and that he concealed them with the intention of depriving their owner from again possessing them. The contention that the record lacks satisfactory proof of the necessary elements of the crime must therefore fail.

Defendant next argues at length that his conviction was based solely upon his admissions unsupported by competent evidence. While it is true that an admission, standing alone, is insufficient to sustain a judgment of conviction, (*People* v. *LaCoco,* 406 Ill. 303; *People* v. *Hobbs,* 400 Ill. 143,) we do not find the defendant's admissions stand alone as the evidence against him in this cause. They are, rather, supported and augmented by evidence both direct and circumstantial, as previously related. Evidence of either quality, being competent to prove the essential elements constituting the crime of receiving stolen goods, (*People* v. *Allen,* 407 Ill. 596; *People* v. *Ferris,* 385 Ill. 186,) must also be deemed competent to support the admissions of one so charged. The same may be said of defendant's argument that proof of the *corpus delicti* is based solely upon his admissions. While a mere naked confession or admission is not sufficient to convict, it is not essential that the *corpus delicti* should be established by evidence independent of that which tends to connect the accused with its perpetration. The same evidence which tends to prove the one may also tend to prove the other, thus permitting the existence of the crime and the defendant's guilt to stand inseparably on one foundation of evidence. (*People* v. *Lueder,* 3 Ill. 2d 487.) It matters not that such a foundation is composed of circumstantial evidence. (*People* v. *Gillespie,* 344 Ill. 290; *Campbell* v. *People,* 159 Ill. 9.) When the proof in the record, previously discussed, is evaluated in these terms, it is apparent that all the evidence

is sufficient to establish each and every element of the *corpus delicti.*

Further with regard to the admissions in evidence, defendant argues, by way of suggestion only, that the trial court had a duty, similar to that arising on the offer of a confession, to conduct a preliminary investigation as to the voluntary origin of such admissions. Such contention is, however, met by many decisions of this court which hold that exculpatory admissions merely raising an inference of guilt do not require proof of their voluntary origin before being admitted in evidence. (*People* v. *Rogers,* 413 Ill. 554; *People* v. *Wynekoop,* 359 Ill. 124; *People* v. *Okopske,* 321 Ill. 32.) In the *Rogers case,* (p. 564), it is stated that "* * * the distinction between a mere admission and a confession is that the latter contains a statement showing the actual participation or agency while the former includes any statements or conduct from which guilt may be inferred but does not necessarily follow." Construed in this light, the statements attributed to defendant when he sought to explain his possession of the guns were clearly but exculpatory admissions, and were properly treated as such when admitted in evidence.

Error is next assigned that venue, as laid in the indictment, was not proved beyond a reasonable doubt. Admittedly the crime of receiving stolen property is one in which the People must prove that the crime was committed in the county wherein the accused is tried. (*Campbell* v. *People,* 109 Ill. 565.) It is not necessary, however, that testimony be given in so many words that the crime was committed in a given county in order to establish venue, (*People* v. *Long,* 407 Ill. 210; *People* v. *Hornaday,* 400 Ill. 361,) but if, from the facts appearing in evidence, the only rational conclusion which can be drawn is that the offense was committed in the county alleged, it is sufficient. (*People* v. *Allegretti,* 291 Ill. 364.) To this end, venue may be proved by circumstantial evidence. (*People* v.

*Cathony,* 376 Ill. 260; *People* v. *Golub,* 333 Ill. 554.) Although the record in the present case discloses that the actual theft of the guns occurred in Cook County at a point but a few miles from Kane County, all of the events upon which defendant's guilty knowledge, possession and concealment are based occurred in Kane County. The residence of Marian Moore and Glenn McRoberts, admitted hiding places for the guns, were also located in Kane County as was the city dump from which they were recovered under defendant's direction. There is no circumstance which shows that defendant ever had possession in Cook County. From all the evidence, therefore, the only rational conclusion which can be drawn is that the crime charged was committed in Kane County and that venue was properly laid and proved by the People.

Contention is also made that the proof fails to establish the fair cash market value of the guns at the time they were stolen, so as to establish whether defendant was guilty of a felony or a misdemeanor. He argues that the only evidence presented was of value at the time of the trial. Such a position is simply not supported by the record. The owner not only testified as to the value of the entire lot of guns, as did another witness, but also as to the value of each gun individually, specifically indicating that the amounts expressed were "the approximate values of the guns as they were on January 4, 1954." Furthermore, we have previously held that testimony as to present worth, which is not objected to at the time of trial, is sufficient to sustain both the jury finding and the resulting penitentiary sentence. (*People* v. *Franklin,* 415 Ill. 514; *Little* v. *People,* 157 Ill. 153.) From the record, we find that the proof of value adduced was proper and sufficient and that it is not subject to the contentions presently made.

The final complaint of defendant is that the court erred in the giving of three instructions tendered by the People.

Two of the instructions, it is urged, attempt to define "reasonable doubt," a practice condemned by this court, (*People* v. *Schuele,* 326 Ill. 366,) and are claimed to have the effect of limiting the presumption of innocence. It is sufficient to point out that this court has, on several occasions, held that instructions phrased in terms similar to those here complained of neither define the meaning of the words "reasonable doubt" nor incorrectly state any principle of law, and are thus not subject to attack. (*People* v. *Van Dyke,* 414 Ill. 251; *People* v. *Moore,* 368 Ill. 455; *Painter* v. *People,* 147 Ill. 444.) What was said in those cases is applicable here. Defendant's argument against the third instruction complained of is again predicated on the erroneous conclusion, previously discussed, that his admissions constitute the sole evidence of his guilt. Inasmuch as the evidence was not so limited, the instruction correctly states the law applicable to the facts of the case.

The judgment of the circuit court of Kane County is, therefore, affirmed. *Judgment affirmed.*