THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL J. GIANGRANDE, Defendant-Appellant.

First District (3rd Division)    No. 80-1592

Opinion filed September 9, 1981.—Rehearing denied November 30, 1981.

Paul Bradley, of Chicago (Bruce Dopke, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Mark E. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WHITE delivered the opinion of the court:

Defendant, Michael Giangrande, following a jury trial was found guilty of murdering his wife, Patricia, and sentenced to the Department of Corrections for 60 years. He appeals.

The record indicates that at approximately 9 a.m. on Sunday, August 26, 1979, Robert Kooy, a Kankakee County farmer, while driving to church with his wife and daughter, noticed two cardboard boxes in his soybean field. There was dew on the ground but no dew on the boxes, indicating they had been placed in the field sometime after sundown the previous evening. Both boxes were neatly taped closed. Kooy, after consulting with his wife, opened the larger box and found it contained a woman's body without arms, legs or head. The box containing the torso had dark printing on it which said "Marathon Toilet Tissue" and also was marked in crayon, "Pine Grove Motel." Other items were found that morning along a roadside about one-half mile south of where the two boxes were found. The other items included a large clear plastic bag which contained a Big Wash laundry detergent box which in turn contained other clear plastic bags which were all bloody, and a pair of rubber gloves. Next to these items was an empty brown paper bag from Colony Foods. All of these, together with the two boxes found earlier were removed to St. Mary's Hospital, where the woman's torso was removed from the box. It was clothed in a night gown, completely covered with blood and enclosed in a clear plastic bag. There was a dark hair in the blood on top of the woman's left breast, and it was removed and placed in a cannister. The smaller, second box was opened. In it was a clear plastic bag containing two arms without hands, two legs which had been severed at the knees, and a head, all covered with blood. Hair samples were removed from the deceased. The body was identified as being that of Patricia Giangrande.

The following Tuesday, August 28, 1979, a search of the Giangrande home produced a large roll of plastic bags which appeared to be of the same type as found with the victim's body. Later, in January 1980, a blood stain was found on the frame of the bed used by the defendant and his wife.

On appeal defendant raises three arguments regarding the sufficiency of the evidence: that the State failed to prove beyond a reasonable doubt that the victim's death was produced by a criminal agency; that he was not proved guilty of murder beyond reasonable doubt; and that the State failed to establish venue in Cook County beyond a reasonable doubt. We discuss these contentions in that order.

Defendant's contention that the State failed to prove beyond a reasonable doubt that the victim's death was produced by a criminal agency is without merit. Dr. Edward Shalgos, who performed the autopsy on the deceased, testified regarding three areas of applied trauma to the head and multiple abrasions on the chest, and that there was no blood in the body. He testified that there were no major organ changes explanatory of death, and as to his opinion of cause of death. His opinion, to a reasonable degree of medical certainty, was that either the victim had died from cardiac arrest due to the applied trauma, most significantly to the cardiac region, or if she was alive when she was dismembered, then exsanguination would have killed her.

In a trial for murder, the *corpus delicti* "consists of two parts or essential elements,—the fact of death, and the fact that death was produced by the criminal agency of some person." (*People v. Garrett* (1975), 62 Ill. 2d 151, 172, 339 N.E.2d 753; *People v. Manske* (1948), 399 Ill. 176, 183, 77 N.E.2d 164.) Both must be established beyond a reasonable doubt. (*People v. Garrett* (1975), 62 Ill. 2d 151, 172.) The fact of criminal agency may be shown by circumstantial evidence. (*People v. Holland* (1973), 11 Ill. App. 3d 591, 594, 297 N.E.2d 310.) There is no question as to the fact of death, and Dr. Shalgos' testimony was sufficient to establish beyond a reasonable doubt that the victim died as the result of a criminal agency.

■■ Defendant contends that suicide was not ruled out as a cause of death. Dr. Shalgos testified, on cross-examination, that there was a theoretical possibility that shortly after the beating of the victim, she could have cut her wrists and bled to death prior to dismemberment. This theory borders on the incredible, and does not amount to a reasonable hypothesis of innocence.

Defendant also argues that the evidence was not sufficient to prove that he was the person who committed the crime. A jury's determination of guilt will not be disturbed "unless the evidence is so improbable or

unsatisfactory as to raise a reasonable doubt of guilt." *People v. Burns* (1980), 81 Ill. App. 3d 860, 863, 401 N.E.2d 1130.

Defendant's murder conviction rests solely on circumstantial evidence. A conviction for murder may be_based solely on circumstantial evidence (*People v. Williams* (1977), 66 Ill. 2d 478, 485, 363 N.E.2d 801; *People v. Hayes* (1979), 70 Ill. App. 3d 811, 820, 388 N.E.2d 818), but the circumstantial evidence "must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime." (*People v. Williams* (1977), 68 Ill. 2d 478, 484.) Where a conviction is based entirely on circumstantial evidence, the facts proved must be consistent with the defendant's guilt and inconsistent with any reasonable hypothesis of innocence. (*People v. Branion* (1970), 47 Ill. 2d 70, 77, 265 N.E.2d 1; *People v. Wilson* (1948), 400 Ill. 461, 473, 81 N.E.2d 211; *People v. Burns* (1980), 81 Ill. App. 3d 860, 863.) If the proof is entirely circumstantial and there is a reasonable hypothesis arising from the evidence which is consistent with the innocence of the defendant, then that hypothesis must be adopted. (*People v. Wilson* (1948), 400 Ill. 461, 473.) However, guilt need not be established beyond any possibility of a doubt. (*People v. Williams* (1977), 66 Ill. 2d 478, 485; *People v. Branion* (1970), 47 Ill. 2d 70, 77.) A jury is "not required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt." *People v. Russell* (1959), 17 Ill. 2d 328, 331, 161 N.E.2d 309.

We believe that the circumstantial evidence presented by the State at trial was sufficient for a jury to conclude that defendant was guilty beyond a reasonable doubt. The hair found on the victim's breast, two hairs removed from the rubber gloves, three hairs found on the underside of the tape of the torso box, and other hairs in evidence exhibited characteristics consistent with the known hair standards of defendant. The two boxes in which the body was found came from defendant's home. Plastic bags similar to the plastic bags containing the body were found in defendant's basement, and a rubber glove similar to the rubber gloves found near the body was recovered from defendant's home. Scraps of tape were observed on some plastic bags found in defendant's garage, and tape of similar width and type was found on the boxes in which the body was found. A blood stain was discovered on the bedrail in defendant's and the victim's bedroom, and this stain was of human blood type AB, the victim's blood type. A section of carpet beneath this stain had been cut out. Dr. Shalgos testified that the amputations were well organized and systematic and that the perpetrator had an understanding of flesh. Defendant had worked as a meat cutter and had used a butcher knife and an electric saw in that capacity. Further, defendant had an-

argument with the victim during the early morning hours of Friday, August 24, 1979. Defendant, in fact, testified that he had difficulties dealing with the victim and that he had received counseling. In addition, the place where the body was found was accessible from defendant's home. This evidence, together with the other evidence elicited at trial, was sufficient to sustain a conviction in a trial free from prejudicial error.

■■ We also conclude that the evidence was sufficient to establish venue within Cook County beyond a reasonable doubt. It is well settled that venue is a fact which must be proved beyond a reasonable doubt. (*People v. Smith* (1980), 91 Ill. App. 3d 242, 245, 414 N.E.2d 751; *People v. Toellen* (1978), 66 Ill. App. 3d 967, 970, 384 N.E.2d 480; *People v. Ross* (1968), 99 Ill. App. 2d 454, 457, 241 N.E.2d 665.) Venue may be proved by circumstantial evidence. (*People v. Mowry* (1955), 6 Ill. 2d 132, 139, 126 N.E.2d 683; *People v. Smith* (1980), 91 Ill. App. 3d 242, 245; *People v. Ross* (1968), 99 Ill. App. 2d 454, 457.) Venue is sufficiently established "if, from the facts appearing in evidence, the only rational conclusion which can be drawn is that the offense was committed in the county alleged." *People v. Mowry* (1955), 6 Ill. 2d 132, 139.

■■ The jury was properly instructed on the issue of venue and could conclude beyond a reasonable doubt that the offense was committed within Cook County, as alleged in the indictment. Defendant and the victim resided in Cook County. The boxes in which the victim was found came from his Cook County home, and the victim and defendant had an argument in that home just prior to her alleged disappearance on Friday, August 24, 1979. Further, blood of the same type as the victim was found in the victim's and defendant's bedroom. Although the body was discovered in Kankakee County, there was no evidence that the offense was committed in that county. There was sufficient evidence for the jury to conclude that venue was established.

In sum, we conclude that the evidence produced at trial would be sufficient to sustain a conviction. However, we believe that the cumulative effect of errors that occurred during the trial deprived defendant of a fair trial and require reversal and a new trial.

Defendant contends that certain comments by the prosecutor in closing argument were designed to shift the burden of proof to defendant. The most blatant comment, according to defendant, was as follows:

> "What it means is, this man had the ability to do what Dr. Shalgos told you was necessary, told you any ordinary person couldn't have done what was done. ° ° ° could be a hunter, could be a doctor, could be a butcher, but Michael Giangrande is a butcher—
>
> MR. BRADLEY [defense counsel]: Objection.
>
> MS. PROPES [prosecutor]: (Continuing)—and his wife was

butchered. *Now where's the evidence that the defendant didn't do it?*

MR. BRADLEY: Objection. He has no obligation to prove anything, and for her to say that we need evidence that he didn't do it is a total contradiction of law in this state.

THE COURT: It wasn't said that you needed evidence.

MR. BRADLEY: She said, where's the evidence.

THE COURT: I heard what was said, Mr. Bradley. Overruled." (Emphasis added.)

Defendant relies upon *People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432. In that case, a prosecutor made repeated assertions to the jury that the defendant had the burden of introducing evidence to create a reasonable doubt of her guilt before she could be acquitted. Objections were made to these assertions which the trial court repeatedly sustained. Nevertheless, the supreme court held that manifestly prejudicial error had occurred, and it stated:

"[T]he prosecution has the burden of proving beyond a reasonable doubt all the material and essential facts constituting the crime. [Citations.] The burden of such proof never shifts to the accused, but remains the responsibility of the prosecution throughout the trial. [Citations.]" 35 Ill. 2d 467, 470.

■■ We are of the opinion that the comment quoted above, when viewed in context, tended to shift the burden of proof to the defense. In reaching this conclusion, we recognize that a prosecutor may comment on the uncontradicted nature of the State's case even where the only person who could have contradicted the State's evidence was the defendant himself. (*People v. Skorusa* (1973), 55 Ill. 2d 577, 584, 304 N.E.2d 630; *People v. Curtis* (1977), 48 Ill. App. 3d 375, 387, 362 N.E.2d 1319.) The comment in the instant case asks, "where's the evidence." It is more than a comment that evidence is uncontradicted. The comment may well have improperly suggested to the jury that defendant had a burden to introduce evidence. Objection to it was overruled by the trial judge. This was error.

Defendant also complains of prosecution closing argument comment concerning the "hair" evidence. A portion of that comment follows:

"Don't you find it a little suspicious that Michael Giangrande's head and arm hair would have ended up on the underside of the tape?

MR. BRADLEY: Objection, that's not the evidence.

THE COURT: I think you could be a little more accurate on that, Ms. Propes.

MS. PROPES: Don't you find it suspicious that limb hair of Michael Giangrande would be on the tape?

MR. BRADLEY: Objection, that's not the evidence.

THE COURT: That's not the evidence.

MS. PROPES: Well, hair just like Michael Giangrande's."

There was no testimony that defendant's hair was found on the tape of the torso box. Jennie Hahn, a forensic scientist, testified that three hair fragments removed from that tape could have originated from defendant. Two were microscopically identical to defendant's known arm hair standard, and the third was microscopically identical to his head hair standard. Thus, the prosecutor overstated the evidence. We note that the court promptly corrected the prosecutor's misstatements and that the prosecutor corrected her misstatement. Nevertheless, the hair evidence produced at trial was a significant element of the State's proof, and the prosecutor's comment may have caused the jury to give undue weight to the hair evidence.

■■ We recognize that improper remarks by a prosecutor generally do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200; *People v. Franklin* (1976), 42 Ill. App. 3d 408, 421, 355 N.E.2d 634.) We cannot conclude that the closing argument comments of the prosecutor did not result in substantial prejudice to defendant.

Defendant also contends that reversible error was committed in the cross-examination and attempted impeachment of Laura Giangrande, a defense witness. The following colloquy occurred during the cross-examination of Laura:

"Q. On the way to Kankakee, did your father tell you that he felt that your mother had been—

MR. BRADLEY: Objection. * * *

MS. PROPES: It's an admission.

THE COURT: Overruled.

MS. PROPES: On the way to Kankakee, did your stepfather tell you that he felt that your mother's friend, Joanne, and her boyfriends had drugged your mother and forced her to submit to perverted, sexual acts, and then photographed her during the commission of those acts. Did he tell you that?

A. No.

Q. Well, now, Miss Giangrande, on August 28th, the very next day when Sergeant Marks and Sergeant Jackson came to your home, didn't you tell them that your father had told you that on the way to Kankakee?

A. No."

In rebuttal, Sergeant Marks testified as follows:

"Q. On that same day, did Laura Diane Giangrande relate to you a conversation that she supposedly had with her father about her mother on their way to Kankakee?

A. Yes, she did.

Q. What did she tell you about that?

[Objection overruled and question restated.]

A. She stated that her father told her that Mrs. Giangrande had a friend named JoAnne Perry, and that she, JoAnne Perry, had a black boyfriend. I believe his name was Jim, and that at one time, this JoAnne Perry had drugged her mother and had taken pictures then of the mother performing certain sex acts with this black man, and later used those pictures to blackmail her into committing other sexual acts with some of her black friends."

In closing argument, the prosecutor referred to this testimony primarily to impeach Laura's credibility, but the prosecutor did state: "Either he told her that and she was telling the truth, * * * but she says he didn't say it now, or she's lying about it. * * *"

Defendant relies upon *People v. Strubberg* (1978), 61 Ill. App. 3d 521, 378 N.E.2d 191. In *Strubberg,* a defense witness, Diane Strubberg, on cross-examination denied telling Robin Wren that defendant told her that he killed a woman. Subsequently, Wren, called by the prosecution as a rebuttal witness, testified that Diane told her that she (Diane) heard defendant tell another person that he (defendant) killed a woman. In closing argument, the prosecutor referred to Wren's rebuttal testimony. The court held that error occurred when the State presented evidence under the guise of impeachment that Diane told Wren that she overheard defendant say that he killed a woman. In that case the error was deemed harmless. The court stated:

"[I]t constitutes error when a prosecutor presents evidence of a prior statement of a witness implicating a defendant in the crime being tried for the purpose of having the trier of fact consider such statement as substantive evidence rather than merely for the purpose of impeachment." 61 Ill. App. 3d 521, 527; see *People v. Montgomery* (1972), 51 Ill. 2d 198, 282 N.E.2d 138.

■■ We are of the opinion that the purported impeachment of Laura Giangrande was improper under the principles recited in *Strubberg.* The prosecution, through its cross-examination of Laura, was attempting to show that defendant had motive to commit the crime for which he was being tried. Further, the prosecutor in closing argument argued that Laura might have been telling the truth when she told Sergeant Marks of defendant's alleged statement. Thus, substantive use was made of the impeachment testimony. The evidence in the trial below was closely balanced. We cannot conclude that this error did not contribute to the verdict of guilty.

Defendant next contends that he was denied a fair trial by prosecution questions of defense witnesses which implied the existence of facts

prejudicial to defendant since no foundation was produced for the questions after the facts alleged by the questions were denied by the witnesses. We address only one example cited by defendant. Laura Giangrande was asked the following question on cross-examination, and she gave the following response:

"Q. And isn't it true that just a few days or within a week before this argument before your mother left, you and your mother had an argument which resulted in you being on top of her on the floor, hitting her?

A. No."

No basis for this question was established in the State's rebuttal case. Given that circumstance, it was improper for the prosecutor to assume during cross-examination of Laura that such an argument occurred. (*People v. Curry* (1975), 25 Ill. App. 3d 637, 644, 323 N.E.2d 778.) In *People v. Nuccio* (1969), 43 Ill. 2d 375, 381, 253 N.E.2d 353, our supreme court held that it was improper for the prosecution to make unsupported insinuations of misconduct on cross-examination without producing supporting evidence in response to denials of misconduct.

Although the cross-examination in the instant case may not have been as egregious as the pattern of unsupported insinuations in *Nuccio*, we feel that the prejudice resulting to defendant from the question quoted above was substantial. Laura Giangrande was an important defense witness.

■■ The State contends that the question, at most, indicated to the jury that Laura did not "get along" with her mother, and that Laura in her testimony admitted that she and her mother did not get along very well. Although this other testimony may mitigate the effect of the improper question, the fact that a daughter's relationship with her mother is less than amiable does not mean that they have physical fights. The State's question suggests that Laura may have had a motive to testify falsely. This error, when considered in conjunction with the errors discussed above, deprived defendant of a fair trial.

Defendant raised other arguments in his brief which we do not address here. For the reasons stated above, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

RIZZI, P. J., and McNAMARA, J., concur.