## E. S. Karoly Electrical Construction Company v. Globe Savings Bank.

1. Forgery—*Must be an Intention to Defraud.*—If a person makes his note by an assumed name, such note will bind him; so too, if, passing himself as bearing the assumed name, he receives checks intended

226     APPELLATE COURTS OF ILLINOIS.

VOL. 64.]   E. S. Karoly Construction Co. v. Globe Savings Bk.

for him but payable to the order of the assumed name, his indorsement thereon of his assumed name will bind him, and if there is no intent to defraud and no one is defrauded, there is no forgery in the transaction.

2. SAME—*Fictitious Names—Fraudulent Intent.*—It is. only where the false or fictitious name is assumed for the purpose of fraud that forgery can be predicated of the act.

Assumpsit, on checks. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the March term, 1896. Reversed and remanded. Opinion filed April 27, 1896.

### STATEMENT OF THE CASE.

Appellant having received two checks payable to the order of G. Rudelius, and apparently indorsed by him, deposited them with appellee and received credit for the amount thereof. The Metropolitan National Bank, on which the checks were drawn, paid the sum they called for to appellee, which last mentioned bank, upon being told that the indorsements " G. Rudelius " were forgeries, repaid the Metropolitan Bank; whereupon appellee brought suit against its depositor, appellant, and recovered a judgment for the amount represented by the two checks, $936.18.

The evidence upon the trial was as follows:

Daniel H. Tolman testified :  " I am a dealer in commercial paper. Am acquainted with the defendant company, also with E. S. Karoly, its president. I have examined the two checks handed me by attorney for plaintiff, and recognize them as checks drawn by me on the Metropolitan National Bank in Chicago."

Checks with their indorsements offered in evidence, viz :

No. 80.                    CHICAGO, April 15, 1895.

The Metropolitan National Bank of Chicago:

Pay to the order of G. Rudelius, four hundred and forty-five dollars ($445).                    D. H. TOLMAN.

(On face of same :)   Accepted. Payable through Chicago Clearing House, April 15, 1895.

METROPOLITAN NATIONAL BANK, per WEGNER.

(Indorsement on back :)   G. Rudelius, E. S. Karoly.

ELECTRICAL CONSTRUCTION Co., by E. S. KAROLY.

Globe Savings bank :   Paid April 16, 1895.

Pay through Chicago Clearing House, to North-Western National Bank.

No. 108.                                    Chicago, April 20, 1895.

The Metropolitan National Bank of Chicago :

Pay to the order of G. Rudelius, four hundred and eighty dollars ($480).                                   D. H. Tolman.

(On face of same :)   Accepted.   Payable through Chicago Clearing House, April 20,1895.

                    Metropolitan National Bank, per Wegner.

(Indorsements on back :)   E. Rudelius, E. S. Karoly.

          Electrical Construction Co., by E. S. Karoly.

Globe Savings Bank:   Paid April 23, 1895.

Pay through Chicago Clearing House, to North-Western National Bank.

And thereupon the witness Tolman further testified :

I delivered these checks as the proceeds of two notes, which I have discounted at the request of the man to whom I delivered the checks.   The checks were delivered by me on the day of their respective dates.   The money on the checks was afterward refunded to me by the Metropolitan National Bank, through whom I learned the indorsement, " G. Rudelius," was a forgery.   Upon being so informed, I went to a man by the name of G. Rudelius, whose place of business is 172 South Clark street, in this city.   I there saw a man who answered to the name of G. Rudelius.   As soon as I saw him I knew he was not the man with whom I had had my dealings.   I said to the man, "Are you G. Rudelius ? " He said " Yes." I then said to him, " Well, you are not the man I have been doing business with." I showed him the two checks which have been offered in evidence; he said that the indorsement " G. Rudelius " on each of the checks was not his signature; he agreed to, and did make an affidavit to that effect.

After Mr. Rudelius had pronounced the indorsements on the checks forgeries, I had an interview with E. S. Karoly, the president of the defendant company, and he told me that when he came to me with the man who claimed to be G.

228    APPELLATE COURTS OF ILLINOIS.

VOL. 64.]    E. S. Karoly Construction Co. v. Globe Savings Bk.

Rudelius, and to whom I gave the checks, he, Karoly, thought that the man's name was really G. Rudelius, but he has since learned that his name was not G. Rudelius, but that he was a man known as " Herman Fred."

Cross-examination :

The notes for the proceeds of which these checks were given, were notes of the defendant, E. S. Karoly Electrical Construction Company. The man to whom I gave the checks called himself G. Rudelius. I dealt with him by that name; the same man intrdouced Mr. Karoly to me, as president of the defendant company. Mr. Karoly, in the presence of this same man, and at my request, furnished me a written statement as to the financial condition of the defendant company. When this man who called himself G. Rudelius came in and said to me, " Mr. Tolman, this is Mr. Karoly," I said, " O, yes, I know Mr. Karoly, he formerly put the electrical works into my bank."

G. Rudelius testified : " My name is G. Rudelius, and my place of business is 172 South Clark street, in this city. I have examined the indorsement, ' G. Rudelius ' on the back of each of the checks introduced in evidence. It is not my signature. I first saw these checks in the possession of Mr. Daniel H. Tolman, who showed them to me. After he called on me, E. S. Karoly also called at my place of business, and talked with me about this matter, and I told him the same thing.

I am acquainted with one Herman Fred; he at one time had desk room in my office."

Wilbur B. Ervin testified : " The proceeds of the first check were paid by the plaintiff to the defendant, April 15, 1895; the proceeds of the second check were paid by the plaintiff to the defendant April 22, 1895."

The plaintiff's counsel then offered in evidence two deposit slips, reading respectively as follows :

GLOBE SAVINGS BANK,
Dearborn and Jackson streets.

Credit to the account of E. S. Karoly, Electrical Construction Co.

$480.                                    CHICAGO, 4–22–1895.

These slips were deposited in our bank by the defendant, together with the checks that are in evidence.

On July 3, 1895, we were notified by the Metropolitan National Bank, that the indorsement of the name G. Rudelius on the checks were forgeries, and we thereupon repaid the Metropolitan National Bank by our check."

Witness resumes: "The defendant has never reimbursed us, and now owes the plaintiff the sum of $936.18, being the sum of the checks and interest at five per cent from July 5, 1895.

OMOHUNDRO & WOODWARD and DAVID J. WILE, attorneys for appellant.

EDWIN C. CRAWFORD, attorney for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

It appears that these checks were made payable to a man who called himself, and was believed by the maker of the checks to be, G. Rudelius. This man, who was dealt with as, and who called himself, G. Rudelius, has never since been seen.

There is nothing to show that this man did not indorse the checks; no evidence that the name G. Rudelius was written by any other person. In brief, no showing that his name was forged.

The fact that a man named G. Rudelius has been found who testifies that the signatures on the backs of the checks are not his, does not establish that the signatures are not those of the man to whose order the checks were made payable; more especially when it is admitted that the witness, G. Rudelius, is not the person with whom the maker of the checks dealt.

Neither does the fact that appellant, who introduced to Tolman the man calling himself "G. Rudelius," afterward told Tolman that he had been mistaken and that the name of the man was "Herman Fred" prove the indorsements "G. Rudelius" to have been forgeries.

230    APPELLATE COURTS OF ILLINOIS.

VOL. 64.]    E. S. Karoly Construction Co. v. Globe Savings Bk.

If Herman Fred had made his promissory note by the name of G. Rudelius, such note would have bound him. So too, if Herman Fred, passing himself off as bearing the name of G. Rudelius, received checks intended for him, Herman Fred, payable to the order of G. Rudelius, his indorsements thereon of his assumed name bound him, and there being no intent to defraud and no one being defrauded, would not be a forgery. Bishop on Crim. Law, Vol. 2, Sec. 596; Regina v. Hodgson, 36 L. & Eq. 626.

On the other hand, if the witness, G. Rudelius, had indorsed his name thereon with intent to defraud and had thus defrauded the person for whom the checks were intended and belonged, he, G. Rudelius, would have been guilty of forgery. Bishop on Criminal Law, Sec. 584.

Every John Smith can not lawfully indorse checks payable to a particular John Smith.

The question in the case at bar was not strictly whether a forgery had been committed, but whether the name G. Rudelius had been indorsed upon the checks by the person to whose order by that name the checks were made. Hoge v. First Nat'l Bank, 18 Ill. App. 501; Shearer v. Pacific Exp. Co., 43 Ill. App. 601; Same, 160 Ill. 215.

Upon this the burden was upon appellee to show that the checks had not been so indorsed. Appellee alleged that it had accepted the checks upon a forged indorsement. This it did not prove.

The judgment of the Superior Court is reversed, and the cause remanded.

MR. P. J. GARY, ON PETITION FOR REHEARING.

The petition misses the point decided. Karoly went with somebody (Fulano, as the Spaniards say) to Tolman and induced Tolman to discount notes made by the appellant, of which Karoly was president, and with Karoly's approval Tolman gave to this Fulano checks. This Fulano, who alone had any right to the checks, indorsed them in the name which—whether true or false makes no difference—he bore in that transaction. The real Rudelius—if there be but one

—real one—had no interest in the business, no concern with it.

Karoly might permit the proceeds of the discount he procured to go where he pleased, and placing them in the possession and control of this Fulano as his own, by any name then truly or falsely borne by him, made his indorsement—not a forgery—but a genuine indorsement by the right man.

If Tolman has canceled or returned the notes made by the appellant, then no injustice is done by this judgment; but the record is silent on that point. In the absence of all history of the notes, no reason appeared why a transaction, concurred in by all parties interested, should be ripped up upon an abstract conjecture that Karoly carried the proceeds of a discount of the paper of his company by one banker, to the credit of his company in another, by means of a harmless fiction.