THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM J. VARELLAS, Defendant-Appellant.

Second District   No. 84—0762

Opinion filed December 4, 1985.—Rehearing denied December 31, 1985.

Dennis M. Doherty, of Chicago, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Dale M. Wood, both of State's Attorneys Appellate Service Commission, and Basil G. Greanias, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

After a bench trial defendant, William Varellas, was convicted of forgery (Ill. Rev. Stat. 1983, ch. 38, par. 17—3(a)(2)) and theft by deception (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(b)(1)) and was sentenced to an extended term of 10 years' imprisonment. He appeals, contending (1) the information was defective for failing to adequately state these offenses; (2) the evidence was insufficient to sustain his conviction; (3) his cross-examination of a witness was improperly limited; and (4) it was error to deny defendant's motion to suppress a statement he made to the police. We affirm.

The State presented evidence in trial that on February 2, 1984, defendant appeared in the First National Bank of Lincolnshire in early afternoon and presented a check drawn on that bank for $47,500 for cashing. The bank teller testified defendant offered an Illinois driver's license for identification which was in the name of Anthony Monterusso, but had on it defendant's photograph; the license had been issued by the Secretary of State on January 31, 1984. The check was dated February 1, 1984, made payable to Anthony Monterusso, and the signature of Sanford Gross was appended as maker, drawing the check on the account of Heritage Brick Corporation. The bank teller testified that Sanford Gross' signature as maker was genuine, that he was an authorized signatory on that account and there were sufficient funds in the account to cover the check. Defendant signed the name "Anthony J. Monterusso" on the back of the check in the teller's presence and, at his request, was given $16,000 in cash and a cashier's check for $31,500 made payable to Anthony Monterusso.

On the next day a bank official contacted the police concerning the check defendant had cashed and police officer Donald Roulo testified he learned on investigation that the driver's license presented by defendant bore a fictitious address and that Sanford Gross had been reported missing to the Chicago police department on February 1, 1984.

Subsequently, on February 4, defendant called the bank saying he was coming in later that day to cash a cashier's check for $31,500. Defendant did appear and presented for cashing the cashier's check on the back of which the name "Anthony J. Monterusso" had been signed. Defendant again identified himself as Anthony Monterusso by use of the Illinois driver's license. The police had been alerted when defendant arrived at the bank and Officer Roulo came to the bank, arrested defendant and took him to the Lincolnshire police station.

Officer Roulo testified that when he left the bank building with defendant the officer asked him if he had a car there, defendant replying that he had left his yellow Corvette in the far corner of the bank parking lot with the engine running. The officer looked, but could not locate the car, and defendant commented that it must have been stolen.

At the police station, defendant was advised of his *Miranda* rights and gave an oral statement to police which was introduced at trial. In it, defendant admitted his real name was William Varellas, and not Anthony Monterusso. Defendant stated that "he cashes checks using false names and identification as part of a juice loan col-

lection type of deal. He gets 10% of the checks he cashes in exchange for cashing the checks." Defendant told the officers he received the $47,500 check in this case from a Paul Richardson and had no idea of Richardson's present location. Defendant also stated he did not know the maker of the check, Sanford Gross, or his present location. Defendant admitted he had cashed the check at the Lincolnshire Bank and received $16,000 in cash and a cashier's check for $31,500. He stated that he and Paul Richardson had flown to Las Vegas where they were unsuccessful in cashing the cashier's check so returned to Lincolnshire for that purpose. Defendant stated he found the identification cards for Anthony Monterusso, which were found in his possession when arrested, in Michigan. At Richardson's request, defendant said he used that identification to obtain the Illinois driver's license. Richardson had given defendant the check in question here, and defendant works for him across the country cashing checks for 10% of the proceeds.

Anthony Monterusso of Grand Rapids, Michigan, testified he lost his wallet in September 1983, and identified as his the cards found on defendant. Monterusso did not know of defendant, Sanford Gross or Heritage Brick Corporation, and did not sign the checks at issue. Sanford Gross did not owe him money and he had no expectation of receiving money from Gross.

No witness was called to offer evidence relating to the Heritage Brick Corporation, and defendant rested without offering any evidence. The trial court found defendant guilty as charged, and he appeals.

I

We consider first whether the information is void for failure to charge the offenses of forgery and theft by deception. Defendant argues the forgery counts failed to allege in detail how the checks were capable of defrauding, whom defendant intended to defraud and who was defrauded, together with the losses sustained. As to the theft by deception counts, defendant contends they were defective for failure to allege how any deception occurred by his merely representing himself to be Anthony Monterusso. Defendant's arguments are essentially conclusionary and are not supported by directly applicable case law.

In count I it was alleged that defendant committed the offense of forgery on February 2, 1984,

> "In that defendant, with the intent to defraud, knowingly delivered to the First National Bank of Lincolnshire, a document apparently capable of defrauding another, in that it purported

to have been made by another, Anthony J. Monterusso, said document being a check number 102 of Anthony J. Monterusso, drawn on the First National Bank of Lincolnshire, dated February 1, 1984, payable to Anthony J. Monterusso in the amount of $47,500.00 and signed as maker Sanford Gross knowing the document to have been thus made."

In count II essentially the same allegations were made charging defendant with the delivery to the bank on February 4, 1984, of a document capable of defrauding another and describing it as a cashier's check number 30741 drawn on the Lincolnshire bank dated February 2, 1984, payable to Anthony J. Monterusso in the amount of $31,500 and signed, as maker, Ms. Brassfield. These counts of the information also each alleged that the offense of forgery was committed in violation of section 17—3(a)(2) of chapter 38 of the Illinois Revised Statutes, which provides,

"(a) A person commits forgery when, with intent to defraud, he knowingly:

(1) Makes or alters any document capable of defrauding another in such a manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority; or

(2) Issues or delivers such document knowing it to have been thus made or altered; ***." Ill. Rev. Stat. 1983, ch. 38, par. 17—3(a)(2).

An information which charges an offense in the language of the statute is sufficient if the words of the statute particularize the offense so that a defendant is apprised, with reasonable certainty, of the precise offense. (*People v. Hockaday* (1982), 93 Ill. 2d 279, 282, 443 N.E.2d 566.) Counts I and II of this information were stated in the terms of the forgery statute under which he was charged and are thus sufficient. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 336-37, 433 N.E.2d 629.) Defendant's assertion that additional allegations are required, such as who was defrauded, lack merit as the State is not required to prove that anyone was, in fact, defrauded. (*People v. Henderson* (1978), 71 Ill. 2d 53, 57, 373 N.E.2d 1338.) Nor was the State required to specify in detail how the checks were capable of defrauding another; these counts did allege that defendant delivered documents, the described checks, which were apparently capable of defrauding in that the checks purported to have been made by another, Anthony Monterusso. This was sufficient to charge forgery, as the checks as delivered had the apparent capacity to defraud another, which is all that is required. *People v. Reynolds* (1980), 85 Ill. App. 3d

549, 552-53, 407 N.E.2d 64; see *People v. Eston* (1977), 49 Ill. App. 3d 747, 364 N.E.2d 609.

Defendant offers a similar argument relating to the sufficiency of counts III and IV of the information which charge theft by deception. Count III alleged, *inter alia*, that on February 2, 1984, defendant committed the offense of theft by deception in violation of section 16—1(b)(1) of chapter 38 of the Illinois Revised Statutes,

> "in that the defendant, knowingly obtained by deception, control over property of the Heritage Brick Corporation, being $16,000 United States Currency, having a total value in excess of $300.00, intending to deprive the owner permanently of the use and benefit of the property, in that he represented himself to be Anthony J. Monterusso, when in fact he was not, * * *."

In count IV, by similar allegations, it was charged that on February 4, 1984, defendant committed theft by deception in violation of the cited statute,

> "in that the defendant knowingly obtained by deception, control over property of the Heritage Brick Corporation, being a cashier's check for $31,500.00, check #30741, dated February 27, 1984 payable to Anthony J. Monterusso, drawn on the First National Bank of Lincolnshire, having a total value in excess of $300.00, intending to deprive the owner permanently of the use and benefit of the property, in that he represented himself to be Anthony J. Monterusso when in fact he was not, * * *."

Section 16—1(b)(1) of the Criminal Code of 1961 provides,

> "Theft. A person commits theft when he knowingly:
>
> (b) Obtains by deception control over the property of the owner; [and]
>
> (1) Intends to deprive the owner permanently of the use or benefit of the property * * *." Ill. Rev. Stat. 1983, ch. 38, par. 16—1(b)(1).

Defendant again contends that to be sufficient counts III and IV must allege facts detailing how the victim was defrauded, how defendant intended to do so and to otherwise describe the precise nature of the crime, citing *State v. Maxwell* (1964), 95 Ariz. 396, 391 P. 560, *E.S. Karoly Electrical Construction Co. v. Globe Savings Bank* (1896), 64 Ill. App. 225, and *People v. Tedesso* (1963), 41 Ill. App. 2d 27, 190 N.E.2d 140.

■ For the same reasons discussed relating to the allegations of forgery contained in counts I and II of the information, we conclude that the offense of theft by deception was sufficiently stated in counts III and IV.

## II

■ Defendant next contends the evidence was insufficient to establish the offense of forgery or theft by deception, arguing the State failed to prove who was defrauded or that defendant intended to defraud anyone, and, that defendant's mere use of the identity of another is insufficient to prove an intent to defraud. Defendant asserts that his conduct in signing the name of Anthony Monterusso to the two checks and using a fictitious driver's license to confirm the signature was merely an exercise of his legal right to assume a different name.

In his reply brief, defendant raises for the first time the argument that the State failed to prove ownership of the money and cashier's check defendant obtained when he cashed the first check on February 2, as no representative of Heritage Brick Corporation testified. As this argument is not timely made, we do not consider it. 87 Ill. 2d R. 341(e)(7).

In order to prove forgery, the State was required to show that defendant had the intent to defraud when he knowingly delivered to the bank a document which was apparently capable of defrauding, as it purported to have been endorsed by another, in this case Anthony Monterusso. (*People v. Stout* (1982), 108 Ill. App. 3d 96, 101, 438 N.E.2d 952; Ill. Rev. Stat. 1983, ch. 38, par. 17—3(a)(2).) Theft by deception, as charged here, is committed when one knowingly obtains by deception control over property of another and he intends to permanently deprive the owner of the use and benefit of that property. (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(b)(1).) The definition of "deception" as used in the theft statute includes a defendant's knowing creation of a false impression in another person. Ill. Rev. Stat. 1983, ch. 38, par. 15—4(a).

An intent to defraud may be inferred from the facts and circumstances surrounding the transaction, and, if the forged instrument is uttered or offered, then this intent will be presumed. (*People v. Henderson* (1978), 71 Ill. 2d 53, 57, 373 N.E.2d 1338; *People v. Eston* (1977), 49 Ill. App. 3d 747, 750, 364 N.E.2d 609.) Also, contrary to defendant's argument, the State need not prove that someone was actually defrauded. *People v. Henderson* (1978), 71 Ill. 2d 53, 57, 373 N.E.2d 1338.

As noted by the State, defendant's use of a fictitious Illinois driver's license to confirm what were clearly false signatures on the back of the two checks, which defendant procured for that purpose, is strong evidence of defendant's intent to defraud. (*People v. Eston* (1977), 49 Ill. App. 3d 747, 750, 364 N.E.2d 609; *People v. Clark*

(1968), 104 Ill. App. 2d 12, 23, 244 N.E.2d 842.) Defendant argues, however, that his use of Anthony Monterusso's name, which was not shown to have been authorized by that person, was a mere assumption of another's identity which, in itself, provides no evidence of guilt.

■ It must first be noted the State is not required to prove defendant did not have authority to use another's name when endorsing the checks at issue (*People v. Eston* (1977), 49 Ill. App. 3d 747, 749, 364 N.E.2d 609), and there was no evidence that defendant was authorized to endorse the checks with the name Anthony Monterusso. To the contrary, the real Anthony Monterusso disclaimed any knowledge of defendant. The cases defendant relies on for his claim that his signing of another's name is not evidence of forgery or deception are of no help to him. This case is distinguished from *Kotter v. People* (1894), 150 Ill. 441, 37 N.E. 932, *People v. Kelley* (1985), 129 Ill. App. 3d 920, 473 N.E.2d 572, and *Strader v. Haley* (1943), 216 Minn. 315, 12 N.W.2d 608, as there was no additional evidence of an intent to defraud on those cases. While *People v. Bailey* (1958), 15 Ill. 2d 18, 23-24, 153 N.E.2d 584, does state that a mere false signing of another's name without intent to defraud or deceive is not alone sufficient for forgery, the court also notes fraudulent intent can be inferred, and is presumed if the false document is uttered.

■ This is not a case where defendant used his own, established alias by which he had also been known for some time when he cashed a check. (See *People v. Kelley* (1985), 129 Ill. App. 3d 920, 473 N.E.2d 572; *People v. Kollmann* (1975), 33 Ill. App. 3d 629, 342 N.E.2d 240, *appeal denied* (1976), 62 Ill. 2d 591.) Instead, this case concerns a defendant who, by his own admission, used fictitious identification to cash checks made payable to other parties, and did so as part of an ongoing criminal enterprise. Moreover, there was no evidence defendant was ever known by or used the name Anthony Monterusso before these offenses; indeed, just a few days before these offenses defendant had procured a false driver's license in that name to assist him in cashing the checks. No one testified that defendant was authorized to cash the checks by signing another's name. Also, there was no evidence that the maker of the first check, Sanford Gross, intended the check to be payable to defendant, but under the mistaken belief that his name was Anthony Monterusso, as in *E.S. Karoly Electrical Construction Co. v. Globe Savings Bank* (1896), 64 Ill. App. 225, cited by defendant.

We conclude that the evidence was sufficient to prove the offenses of forgery and theft by deception.

## III

■ Defendant next contends error requiring a new trial occurred when the trial court limited his cross-examination of a prosecution witness.

In his examination of police officer John Sullivan, defendant's counsel sought to inquire of the witness whether Jerry Gross, the father of Sanford Gross, who was the maker of the check drawn against the account of Heritage Brick Corporation, was reputed to be a present or former "juice loan" collector and whether he had a criminal record. The State's objection was sustained, and, in chambers, defendant's counsel stated to the court that he had information Jerry Gross was so employed and had three felony convictions.

Defendant argues he was thus denied his right to develop his theory of defense and to present evidence which might create a doubt as to his guilt, citing, e.g., United States v. Vole (7th Cir. 1970), 435 F.2d 774, People v. Molsby (1978), 66 Ill. App. 3d 647, 383 N.E.2d 1336, and People v. Durr (1978), 58 Ill. App. 3d 525, 374 N.E.2d 873.

Defendant was, in fact, permitted to inquire whether the witness knew if Jerry Gross was involved in the "juice business"; the officer responded he did not know. The trial court correctly barred inquiry into the criminal record of that person as Jerry Gross did not testify and could not, thus, be impeached and the evidence also would not be relevant as to defendant's guilt or innocence of the charged offenses. It is within the trial court's discretion to deny admission of evidence, and the court will be reversed only where that has been abused. (People v. Ward (1984), 101 Ill. 2d 443, 455-56, 463 N.E.2d 696.) While a defendant is entitled to present evidence which might tend to create doubt of his guilt, it must be relevant to the issues at trial to be admissible. (People v. Durr (1978), 58 Ill. App. 3d 525, 532, 374 N.E.2d 873.) The criminal record, if any, of Jerry Gross had no relevance to defendant's guilt or innocence. Defendant's activities relating to this transaction were clearly established by the evidence, and any unfavorable evidence relating to other possible participants in the enterprise could not be relevant.

## IV

■ Defendant's last contention is that the statement given to the arresting officer outside of the bank, prior to being given Miranda warning, should have been suppressed.

The statement in issue was defendant's response to the officer's question whether he had a car in the bank parking lot before taking defendant to the police station. Defendant replied he did have a car

parked in the lot and, after the officer could not find it, that it must have been stolen as defendant had left the engine running while he was in the bank. The parties agree *Miranda* warnings were not given at that time, although they were administered at the police station prior to further questioning of defendant.

It seems apparent defendant was in custody when questioned relating to a car (see *People v. Clark* (1980), 84 Ill. App. 3d 637, 640, 405 N.E.2d 1192; *People v. Hentz* (1979), 75 Ill. App. 3d 526, 530, 394 N.E.2d 586), and the warnings as to defendant's rights should have been given at that time. Whether the officer sought information relating to the car for possible evidence of crime, to apprehend an accomplice or simply to protect it after defendant's arrest, would not affect the question.

However, in view of the clear evidence of defendant's guilt, the comments by defendant, which were partially volunteered, relating to his car added little, if anything, to the State's case and do not require reversal. In a bench trial it is presumed the judge considered only competent evidence in reaching his decision (*People v. Lester* (1981), 102 Ill. App. 3d 761, 768, 430 N.E.2d 358), and even if considered here, this evidence could not have changed the outcome of the trial and would be harmless error.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOPF and REINHARD, JJ., concur.