(No. 34721.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VERA F. BAILEY, also known as Frances Bailey, Plaintiff in Error.

*Opinion filed September 18, 1958—Rehearing denied Nov. 14, 1958.*

KENNETH A. GREEN, of Mattoon, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and HUGH HARWOOD, Special State's Attorney, of Charleston, (FRED G. LEACH, and WILLIAM H. SOUTH, of counsel,) for the People.

Mr. JUSTICE DAVIS delivered the opinion of the court:

A jury in the circuit court of Coles County found the defendant, Vera F. Bailey, guilty of passing a forged county order as charged in the fourth count of the indictment upon which she was tried. After post-trial motions had been overruled, the court sentenced defendant to confinement in the State Reformatory for Women for a term of not less than one nor more than three years. She prosecutes this writ of error to reverse the judgment of the circuit court upon the ground that the evidence does not establish that the order in question was passed with intent to defraud.

All counts in the indictment pertained to county order number 2201, dated July 8, 1955, payable to Mrs. Thomas Wilson, in the sum of $40, which had been issued by the county clerk and county treasurer against the county aid-to-dependent-children fund. The order bears the notation: "For the care of Carolyn Gilbert for June 1955." Count I

charged that the defendant forged the endorsement of Mrs. Wilson upon the order with intent to defraud and damage her; count II was similar, except it alleged intent to damage and defraud the county of Coles; count III was stricken at the request of the People; and count IV, upon which the jury's verdict was based, charged that the defendant unlawfully, feloniously, wilfully and fraudulently uttered and passed the order in question to the Central National Bank of Mattoon, as true and genuine, with knowledge of the falsity of the endorsement and with intent to damage and defraud the county. Defendant neither questions the legal sufficiency of the indictment nor claims that the jury's verdict is not responsive to the charge made in the fourth count.

Since the question raised is one of fact, it will be necessary to review the evidence in detail. The defendant had been the probation officer of the county court of Coles County during 1954 and until October of 1955. Her responsibilities included the supervision of the placement and care of children adjudged dependent, in suitable foster homes within the county. She arranged for the support payments for such children from the county aid-to-dependent-children fund, which existed by virtue of appropriations made by the county board. Orders against this fund were issued by the county clerk and countersigned by the county treasurer as ordered by the county court. A deputy county treasurer testified that these orders were usually mailed or delivered to the respective payees prior to the 15th day of any given month in payment for the care of the child for the preceding month; and that ample funds were in that account at all times to pay the orders issued.

In April of 1955, the defendant placed Richard and Carolyn Gilbert, dependent children, in the home of Mr. and Mrs. Thomas Wilson. Richard remained there only a month, and Carolyn for about six months. Mrs. Wilson testified that the defendant told her she would be paid $40

per month for the care of each child and the payments would be received about the 6th of every month for such care for the preceding month; that she did not receive the May payments, due in June, for the care of the children; and that she called the defendant and told her about it and the defendant told her to "keep looking," that the county was "broke." The defendant did not deny these statements. Mrs. Wilson further testified that she called the State's Attorney who told her the county was not "broke."

Meanwhile county orders for the care of Richard and Carolyn for the month of May had been issued in due course. People's exhibit 2, received in evidence, is an order numbered 1876, dated June 6, 1955, drawn on the aid-to-dependent-children fund in the amount of $40 payable to Mrs. Thomas Wilson and bearing the notation "For Care of Carolyn Gilbert for May 1955." People's exhibit 4, numbered 1856, is similar, except it bears the notation "For Care of Richard Gilbert for May 1955." Both orders bear the endorsements "Mrs. Thomas Wilson" and "Vera F. Bailey." The defendant admitted that she endorsed Mrs. Wilson's name on the back of these orders and that the endorsements were without authorization. It is also undisputed that both orders were deposited to defendant's account in the Central National Bank of Mattoon. The order for Carolyn's care was deposited on June 14, 1955, and paid on June 17; while the one for Richard's care was deposited on June 11, and paid on June 15. Fran Boyer, a deputy county treasurer, testified that the defendant "asked me not to mail these checks to Mrs. Wilson, but to hold them and she would pick them up;" and that the witness delivered them to the defendant. This likewise was not denied.

Mrs. Wilson testified that in the early part of July, when she had money coming for May and June, she called the defendant and was again told that the county was

"broke;" and that, without any request on her part, the defendant then gave her a personal check in the amount of $40 which she understood was for the care of Carolyn for the month of June. These events occurred early in July sometime before Mr. and Mrs. Wilson, accompanied by Carolyn, went on a short vacation. Neither the defendant nor Mrs. Wilson was certain as to the date, but defendant thought it was sometime around July 4, since mention was made of the holiday traffic in their conversation. County order 2201, the instrument specified in the indictment, was issued for the care of Carolyn for the month of June. Like the others, it was delivered to defendant by the deputy county treasurer. It bears the endorsements "Mrs. Thomas Wilson" and "Vera F. Bailey," was deposited by defendant to her account in the bank on July 21, and shows on its face that it was paid on July 23. Defendant admits that she endorsed the name of Mrs. Wilson on this order and that she lacked authority to do so. Mrs. Wilson was never informed of the issuance or disposition of this order. Defendant testified that she gave a personal check in like amount to Mrs. Wilson which had been paid, but that she had been unable to find such check. She stated that the July county checks were late and that when she received the county order she used it to replace the check she had given Mrs. Wilson. She denied that she had received any of the $40 for herself, stating that it "was for the care of the child."

Mrs. Wilson testified that she received nothing for the care of Carolyn except the $40 personal check of the defendant given to her in early July. People's exhibit 3 is county order number 2339, payable to Mrs. Thomas Wilson, in the sum of $40, dated August 10, 1955, issued for the care of Carolyn for July. It is undisputed that defendant also received this order, signed Mrs. Wilson's name and her name as endorsements thereon and deposited it to her account on August 17, 1955. It was paid in due course on

August 19. Mrs. Wilson further testified that in September of 1955 she received defendant's personal checks in the sum of $160, and that: "When they came I didn't know what to do because I knew of this trouble and they all came at one time and they was marked like I should have been paid on the dates of the month so I called the state's attorney and he said he'd come get them, for me not to spend them." The defendant neither denied sending these checks to Mrs. Wilson nor did she attempt to explain why she did so. It is undisputed that Mrs. Wilson was finally paid for the care of Carolyn for the summer months by three orders issued by the county in October; and that she never requested defendant to issue any personal checks to her. When Mrs. Wilson was subpoenaed to appear before the grand jury, the defendant brought her from Mattoon to Charleston, the county seat, at which time she told her "it was all a mistake."

Defendant admitted that she endorsed Mrs. Wilson's name on the order in question without authority, but contended that there was no evidence of intent to defraud, since she was merely reimbursing herself for money advanced to Mrs. Wilson. Defendant contends, and we concede, that a false signing of another's name to an instrument without intent to defraud or deceive someone does not constitute the crime of forgery; (*People* v. *Fore,* 384 Ill. 455; *People* v. *Reichert,* 357 Ill. 205; *People* v. *Ernst,* 306 Ill. 452; *Fox* v. *People,* 95 Ill. 71,) and that it was therefore incumbent upon the People to prove that the defendant, at the time she signed Mrs. Wilson's name to the order and passed it to the bank, did so with intent to defraud. In such cases the facts and circumstances surrounding the transaction should be examined in order to determine whether fraudulent intent in fact existed, since, under proper circumstances, such intent may be inferred (*People* v. *Ciralsky,* 360 Ill. 554; *People* v. *Beacham,* 358 Ill. 373; *People* v. *Meyer,* 289 Ill. 184), and if the forged

instrument is uttered the intent to defraud is presumed. (*People* v. *D'Andrea,* 361 Ill. 526; *People* v. *Katz,* 356 Ill. 440.) Where the question of intent is in issue, evidence of distinct and similar offenses at about the same time is admissible to show the intent of the defendant in committing the forgery charged. (*People* v. *Church,* 366 Ill. 149; *People* v. *Dunham,* 344 Ill. 268; *People* v. *Vammar,* 320 Ill. 287.) Defendant concedes the foregoing principles of law.

In arguing that the order in question was not endorsed and passed with intent to defraud, defendant has ignored the evidence. At the time defendant issued her personal check for $40 to Mrs. Wilson, she had already received, endorsed and appropriated to her own use, two county orders payable to Mrs. Wilson, each in the sum of $40, which had been issued in June. In the light of that fact, the statement that the defendant used the July order to repay herself for the money she had advanced to Mrs. Wilson by personal check, appears incredible. As a matter of fact, she had profited $80 by her unlawful conduct before she endorsed and deposited the particular order mentioned in the indictment. Though she attempted to explain the endorsement and appropriation of the order of July 8, she offered no explanation whatever for her action with respect to the June orders. When we consider that defendant also received, endorsed, and deposited to her account the order issued to Mrs. Wilson in August, which is likewise unexplained, the unfounded account of the appropriation of the July order becomes brazen and unworthy of counsel.

There are other incriminating circumstances from which an intent to defraud may be found. Defendant's statements that the county was "broke" disclose a deliberate effort to conceal her defalcations and forestall action to collect by Mrs. Wilson. These statements were admitted to be false. The act of the defendant in telling the deputy county treas-

urer to deliver the Wilson orders to her and not to send them to Mrs. Wilson, is also indicative of defendant's fraudulent intent. Notwithstanding that defendant well knew she had received and cashed the orders payable to Mrs. Wilson which were issued in June, she told Mrs. Wilson to "keep looking" for them. Such conduct is inconsistent with honest motives.

Most important of all, however, is a fact apparent only from an inspection of the handwriting on the back of exhibits 1, 2, 3 and 4. The words "Mrs. Thomas Wilson" are much smaller and finer in character than the words "Vera F. Bailey." There is such a difference in size, character and spacing that the two signatures do not appear to the layman to have been made by the same hand. However, defendant admits that she made both endorsements. If she was openly and honestly reimbursing herself for the check given to Mrs. Wilson, as she testified concerning exhibit 1, then there is no explanation for her obvious effort to disguise or differentiate the endorsements on the orders. Likewise, if her motive and conduct were beyond reproach, it was unnecessary for her to tender $160 in personal checks to Mrs. Wilson in September, after, as the latter testified, there was "trouble." Mrs. Wilson had made no demand on the defendant for such personal checks. We conclude that defendant was thereby attempting to extricate herself from ominous circumstances. The unsolicited tender of the personal checks which, in the words of Mrs. Wilson, were "marked like I should have been paid on the dates of the month," is not consistent with a clear conscience.

The evidence in this record adequately proves beyond a reasonable doubt that the order in question, admittedly forged, was uttered with intent to defraud. The jury was justified in reaching that conclusion. The judgment of the circuit court of Coles County is affirmed.

*Judgment affirmed.*