THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT BOKUNIEWICZ, Defendant-Appellant.

Second District   No. 2—86—0391

Opinion filed September 2, 1987.

G. Joseph Weller and Kerry Evan Saltzman, both of State Appellate Defender's Office, of Elgin, for appellant.

Thomas F. Baker, State's Attorney, of Woodstock (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, and Richard L. Salon, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:
Defendant, Robert Bokuniewicz, was convicted of forgery (Ill.

Rev. Stat. 1985, ch. 38, par. 17—3(a)(2)). He appeals, contending that he was not proved guilty beyond a reasonable doubt because the State failed to prove several elements of the offense. He also contends that his five-year sentence was an abuse of discretion. We affirm.

The facts are not in dispute. Defendant was formerly a practicing attorney. In the spring of 1983, he was hired by Rose Harnett to handle the sale of her home in Bellwood, Illinois. After the house had been sold, Harnett gave defendant the money realized from the sale, as well as money from her savings account, to invest for her. In June 1985, Harnett's daughter, Ellen Mangano, noticed that her mother's resources were being depleted. She questioned defendant about this, but did not receive a satisfactory answer, although defendant did give her a check for $5,600, representing a portion of her mother's funds. She thereafter hired attorney Edward Dean to do what he could to recoup her mother's money.

Dean arranged a meeting with defendant on June 22, 1985, at Dean's office. Dean demanded that defendant either turn over Harnett's funds or provide an accounting for them. Defendant told Dean that he had all of Harnett's funds but was having trouble liquidating them. Defendant gave Dean a cashier's check drawn on the Bank of Wheaton for $176,000. Defendant told Dean not to cash the check, stating that he had obtained it only to show Harnett that he had her money and could produce it as soon as he could liquidate her assets. The check contained a restrictive endorsement that it could only be deposited in a particular account and was not endorsed by defendant.

It was later discovered that the check had originally been made out to defendant for $176, not $176,000. Defendant was later arrested and charged with forgery. He was convicted following a bench trial on February 10, 1986.

At the sentencing hearing on April 7, 1986, the court heard testimony from several former clients of defendant that defendant had misappropriated substantial sums of their money to his own use. Defendant testified that his conduct resulted from his inability to find work as an attorney while his family and friends enjoyed considerable success. He professed remorse and a desire to provide restitution to those he had harmed. The court sentenced the defendant to the maximum term of five years' imprisonment.

On appeal, defendant first contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt of forgery. Specifically, he posits that the State failed to prove that he either altered the check or knew that it was altered, that he possessed the requisite

intent to defraud, or that the altered check was capable of defrauding anyone.

The elements of the offense of forgery were set out in *People v. Hockaday* (1982), 93 Ill. 2d 279, 282, 443 N.E.2d 566, as follows:

> "(1) a document apparently capable of defrauding another; (2) a making or altering of such document by one person in such manner that it purports to have been made by another; (3) knowledge by defendant that it has been thus made; (4) knowing delivery of the document; and (5) intent to defraud."

Defendant concedes that the cashier's check was altered by someone, but claims that the State failed to prove that it was defendant who altered it, or that defendant passed the check knowing it had been altered.

The drawer of the check was Barbara Bibbiano. Defendant postulates that it is at least as likely that Bibbiano altered the check as defendant. This argument is patently without merit.

David Ellis, vice-president of the Bank of Wheaton, testified about the bank's procedure for issuing a cashier's check. When a teller receives a cashier's check requisition and payment therefor, the teller prepares the check, and it is then signed by either a teller or a supervisor, depending on the amount of the check. It is apparent that Barbara Bibbiano was the Bank of Wheaton employee who prepared the check. A carbon copy of the check in the amount of $176 was introduced into evidence. Defendant does not even speculate as to a possible motive, much less an opportunity, for Bibbiano to alter the amount of the check after it had been thus prepared.

Further, it is undisputed that defendant purchased the check in the amount of $176 and later gave the check to Dean showing an amount of $176,000. Thus, defendant must have known that the check had been altered by someone. It is not necessary that defendant himself had altered the check, only that he knew of the alteration. *People v. Hockaday* (1982), 93 Ill. 2d 279, 282, 443 N.E.2d 566.

Defendant next contends that the State failed to prove that he possessed the intent to defraud. Defendant points out that he informed Dean that the check represented defendant's own funds rather than Harnett's and told Dean not to cash it. This, according to defendant, vitiated any intent to defraud.

Generally, if a defendant passes a forged document, intent to defraud is presumed. (*People v. Bailey* (1958), 15 Ill. 2d 18, 23-24, 153 N.E.2d 584; *People v. Eston* (1977), 49 Ill. App. 3d 747, 750, 364 N.E.2d 609.) Defendant's statements to Dean do not overcome this presumption. At the June meeting, defendant gave Mangano a check

for $5,600 and told her he needed more time to obtain the rest of the money. He later gave Dean the $176,000 check. Although defendant did not tell Dean that the money represented Mrs. Harnett's funds, he did imply that the check represented sufficient collateral for those funds. The obvious motive was to buy himself more time until his "inevitable arrest." Although defendant correctly points out that he did not receive value for the check, he did cause Harnett to delay, at least for a few days, or forego entirely, possible legal remedies which she might have had.

Both parties cite *People v. Hackbert* (1973), 13 Ill. App. 3d 427, 300 N.E.2d 777, as being relevant to this issue. In *Hackbert*, defendant cashed an admittedly forged check at the hotel where he was staying. Defendant argued that he lacked the requisite intent to defraud because at the time he was arrested, he was on his way to get the money to pay back the hotel. In addition, he noted that the hotel held his clothes and other property as security for the debt. (13 Ill. App. 3d 427, 428-29, 300 N.E.2d 777.) We agree with the State that *Hackbert* is closely analogous to this case. The *Hackbert* court stated:

"Defendant's conduct, even assuming he intended that the check not be cashed because he would provide cash later, was criminal because the forged check was delivered to the clerk in exchange for $30. Giving a false security in the form of a promissory instrument has been recognized as the subject of forgery." (13 Ill. App. 3d 427, 429, 300 N.E.2d 777.)

There is no requirement that someone be actually defrauded. *People v. Eston* (1977), 49 Ill. App. 3d 747, 750, 364 N.E.2d 609.

■ Defendant in the instant case intended that Dean, Mangano and Harnett treat the check as genuine in order to avoid possible legal consequences of his actions. Although he did not intend the check as repayment of the funds, he did intend it as "false security" for his debt to Harnett.

■ Defendant also argues that the check was not an instrument "apparently capable of defrauding another" because Dean could not have cashed the check absent defendant's endorsement (Ill. Rev. Stat. 1985, ch. 26, par. 3—204), and because he told Dean not to cash it. The capacity of the forged instrument to defraud need only be apparent, not actual. The test is whether a reasonable or ordinary person might be deceived into accepting the document as genuine. (*People v. Reynolds* (1980), 85 Ill. App. 3d 549, 553, 407 N.E.2d 64.) Although the issue has never been squarely decided by an Illinois court, it is generally held that the payee's endorsement is not necessary to make the instrument capable of defrauding. See, *e.g., State v. Hernandez*

(1966), 4 Ariz. App. 451, 452, 421 P.2d 533, 534; *Jones v. State* (Tex. Crim. App. 1975), 545 S.W.2d 771, 779; 37 C.J.S. *Forgery* sec. 23 (1943).

In an analogous situation, the Illinois Appellate Court upheld a forgery conviction even though defendant attempted to cash the check more than 10 months after it was drawn. This would have permitted the drawer to refuse payment under section 3—304(3)(c) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 3—304(3)(c)). (*People v. Connell* (1980), 91 Ill. App. 3d 326, 334, 414 N.E.2d 796; see also *People v. Marks* (1965), 63 Ill. App. 2d 384, 389, 211 N.E.2d 548, *cert. denied* (1966), 385 U.S. 876, 17 L. Ed. 2d 103, 87 S. Ct. 153 (defendant attempted to cash check marked "void after 30 days" 43 days after its date).) *People v. Moats* (1972), 8 Ill. App. 3d 944, 291 N.E.2d 285, cited by defendant, is distinguishable. In that case, the court held that the information was insufficient to charge forgery where its description of the instrument omitted both the payee and the amount. (8 Ill. App. 3d 944, 947, 291 N.E.2d 285.) It would be obvious to anyone that such an instrument was void and of no legal effect, whereas the effect of the lack of an endorsement would not be so apparent.

■ In addition, we have already determined that defendant intended to defraud Dean and Harnett by offering the check as false security for Harnett's funds. Under such circumstances, defendant's endorsement was not required to achieve the desired result. For the same reason, defendant's warning to Dean not to cash the check did not render the document incapable of defrauding.

■ Defendant's final contention is that his five-year sentence, the maximum permissible under the statute, was an abuse of discretion. Defendant argues that he has no significant prior criminal history, that the actual forgery at issue caused no harm to anyone, he expressed remorse and a desire to make restitution and, because of his background and education, his potential for rehabilitation is high. He complains that the trial court failed to take into account these mitigating factors and thus abused its discretion.

The imposition of sentence is a matter peculiarly within the province of the trial court, and the sentence imposed should not be disturbed absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154-56, 368 N.E.2d 882.) While the trial court is required to consider defendant's rehabilitative potential in imposing sentence, it is not required to give greater weight to this factor than to the seriousness of the offense. (*People v. Mack* (1985), 133 Ill. App. 3d 788, 793, 479 N.E.2d 445.) Where mitigating evidence was presented to

the trial court, it is presumed that the court considered that evidence, even though it specifically articulates factors in aggravation but does not specifically articulate factors in mitigation. *People v. Abrego* (1986), 142 Ill. App. 3d 973, 986, 492 N.E.2d 636.

■ Defendant's argument might have merit if, as defendant seems to suggest, we considered the instant offense in a vacuum. However, we think the trial court properly considered the forgery in question as part of a larger scheme which resulted in depriving a widow in her eighties of much of her life's savings. The trial court also heard testimony from other former clients who had lost money entrusted to defendant. Such evidence was properly considered by the trial court. As the supreme court has stated:

> " 'The rules of evidence which ordinarily obtain in a trial where guilt is denied do not bind the court in its inquiry. It may look to the facts of the [crime], and it may search anywhere, within reasonable bounds, for other facts which tend to aggravate or mitigate the offense. In doing so it may inquire into the general moral character of the offender *** [and] his natural inclination or aversion to commit crimes ***.' " (*People v. La Pointe* (1981), 88 Ill. 2d 482, 495, 431 N.E.2d 344, quoting *People v. Adkins* (1968), 41 Ill. 2d 297, 300-01, 242 N.E.2d 258.)

This inquiry may extend to misconduct which has not resulted in prosecution or conviction (*People v. Brisbon* (1985), 106 Ill. 2d 342, 364-65, 478 N.E.2d 402; *People v. La Pointe* (1981), 88 Ill. 2d 482, 495, 431 N.E.2d 344.) The only relevant considerations are the reliability and accuracy of this evidence. *People v. La Pointe* (1981), 88 Ill. 2d 482, 494-95, 431 N.E.2d 344; *People v. Tompkins* (1987), 155 Ill. App. 3d 380, 382, 508 N.E.2d 481.

In the instant case, numerous witnesses testified to incidents in which defendant converted clients' funds. This is clearly relevant to defendant's "general moral character" and his "inclination *** to commit crime." The witnesses testified from personal knowledge and were subject to cross-examination. Thus, the accuracy of the evidence was not open to question. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 494-95, 431 N.E.2d 344.) The evidence was properly considered by the trial court in aggravation. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(a).) In passing sentence, the court specifically found one factor in mitigation, defendant's lack of significant criminal history. In the absence of any indication to the contrary, we will presume that the court considered all mitigating evidence presented. The court's imposition of a five-year sentence for forgery was not an abuse of discretion.

For the foregoing reasons, defendant's conviction and sentence are affirmed.

Affirmed.

HOPF and INGLIS, JJ., concur.