THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMIE LEE TURNER, Defendant-Appellant.

Second District   No. 2—87—0988

Opinion filed February 1, 1989.—Rehearing denied March 8, 1989.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, John X. Breslin, and Nancy Rink Carter, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Jamie Lee Turner, following a jury trial in the circuit court of Du Page County, was found guilty of forgery (Ill. Rev. Stat. 1985, ch. 38, par. 17—3(a)(1)) and illegal use of a credit card (Ill. Rev. Stat. 1985, ch. 17, par. 5921) and was sentenced to concurrent terms of imprisonment of 364 days on the illegal use of credit card conviction and three years on the forgery conviction, with credit for 69 days served on the forgery conviction. The forgery conviction also was to be served concurrently with three other separate felony convictions.

Defendant appeals the forgery conviction only and raises the following issues: (1) whether the State proved venue in Du Page County beyond a reasonable doubt and, alternatively, whether the jury should have been instructed that the State must prove venue; (2) whether the State proved beyond a reasonable doubt that the check was apparently capable of defrauding another; (3) whether the trial court erred in failing to instruct the jury that the State must prove the check was a document apparently capable of defrauding another, an essential element of the offense of forgery; (4) whether the trial court erred by permitting the admission of hearsay evidence, by prohibiting a defense witness from testifying for failure to disclose the witness in discovery, by prohibiting defendant from testifying to a relevant conver-

sation, and by overruling objections to the prosecutor's improper final arguments; and (5) whether a new sentencing hearing on the forgery conviction should be granted where the prosecutor breached a plea agreement regarding credit for time served made in conjunction with dispositions in other charges against defendant.

The following relevant facts were adduced at trial. On November 26, 1986, at approximately 8 p.m., Terry Foote, a limousine driver, picked up defendant in a limousine at the corner of Bloomingdale and Army Trail Roads. Foote believed the person he picked up was a Mr. Oldham. Shortly after picking up defendant, Foote asked him how he was going to pay for the limousine service to which defendant answered that he was going to pay with a check. Foote then requested a driver's license as identification, but defendant said he did not have one. Foote then asked for a credit card for purposes of identification, and defendant gave him a credit card. The evidence establishes that the credit card belonged to William Oldham. Foote made an impression of the card, retained the receipt, and returned the card to defendant.

According to Foote, he drove to Aurora, where defendant went into a house, entered several different bars, brought people out and went for rides in the limousine, then he and defendant drove back to Route 59. At around 11 p.m., he drove defendant to a mall with a restaurant which is located along Route 59. Foote testified, over hearsay and foundational objections, that while defendant was in a rest room he radioed his dispatcher to check the validity of the credit card which defendant had given him. After defendant had reentered the limousine and Foote was again driving northbound on Route 59, the dispatcher responded that Foote should confiscate the card because it was bad. Defendant asked what credit card they were talking about to which Foote responded that it was a previous customer's card.

Foote continued to drive north on Route 59, but stopped again, and defendant entered another bar. At that point, Foote requested that the dispatcher have the police respond because he did not think he was going to be paid. Before the police could respond, defendant reentered the limousine and requested Foote to continue north on Route 59. According to Foote, they continued to go from one establishment to another and were never in one place long enough for the police to arrive.

As Foote drove north on Route 59 near Joliet Road, he observed a squad car involved in a traffic stop, pulled the limousine in behind the squad car, exited the limousine, and asked the police officer for help. Another officer arrived shortly thereafter.

Defendant told the officers that he was William Oldham, but one of them recognized defendant and told him that he knew he was Jamie Turner and not William Oldham. Defendant told the officers that William Oldham was a friend of his and that he had given him permission to use his credit card. The police dispatcher then attempted to telephone Oldham to verify defendant's story but was unable to contact him.

One of the officers then asked defendant for the credit card, but defendant responded that he had given it to the limousine driver. Defendant consented to a search of his pockets which produced several credit card receipts with William Oldham's name imprinted on them. The officers also found a credit card invoice in the front of defendant's pants. A search of the area around the limousine failed to produce the missing credit card.

At around 7 a.m. that morning, the officers returned to the scene to search for the credit card. They discovered a credit card in the grass with William Oldham's name on it as well as three checks in the area where the credit card was found with William Oldham's name printed on them.

One of the checks found at the scene was made out for $265, dated November 27, 1986, signed as William R. Oldham, but had no payee's name on it. The State and defendant stipulated to the expert opinion of a handwriting analyst that the handwriting on that check, which defendant is charged with forging, is that of defendant.

William Oldham testified that he knew defendant for several weeks prior to defendant's arrest. Defendant had been in Oldham's home three or four times. According to Oldham, his Master Card and approximately five checks were stolen from his home. He never gave defendant permission to use the credit card or to sign his name on the check found at the scene. Nor did he sign the check.

Oldham stated that on November 12, 1986, he and defendant went to East Aurora and picked up a guy and two girls and they all returned to Oldham's home. He noticed his credit card missing several days later and reported it missing about one week later. He later notified the police.

Defendant took the stand in his own behalf and attempted to testify only to a conversation he had with Oldham on November 28, 1986, the day after the limousine incident. The State's objection on relevancy grounds was sustained, however, and defendant did not testify further or offer any other witnesses or evidence.

We shall address first defendant's contention that he should be granted a new trial because the trial court, *sua sponte*, failed to in-

struct the jury that the check allegedly made by defendant was a document apparently capable of defrauding another, an essential element of the offense of forgery. The State responds initially that the issue is waived by defendant's failure to object to the issues instruction submitted by it and given by the trial court, by defendant's failure to offer an instruction including this element, and by defendant's failure to include this issue in his written post-trial motion. The State also maintains that the issues instruction given by the trial court, although not including this element, was sufficient, and the jury, by necessary implication, concluded that the check in question was apparently capable of defrauding another. The State further argues that any error in failing to include this element in the issues instruction was harmless.

■■ ■ As the State correctly points out, defendant failed to object to the issues instruction tendered by the State, to offer an alternative instruction, or to include the issue in his post-trial motion. Generally, a defendant who fails to object or to proffer an alternative instruction at trial, or to raise the issue in a post-trial motion, waives any error contained in the jury instructions. (*People v. Reddick* (1988), 123 Ill. 2d 184, 198, 526 N.E.2d 141.) If the interests of justice require, however, substantial defects in jury instructions in criminal cases may be considered, even though the defendant failed to make timely objections. (107 Ill. 2d R. 451(c); *Reddick*, 123 Ill. 2d at 198, 526 N.E.2d at 147.) This exception applies to correct grave errors or to correct errors in cases where the evidence is closely balanced that fundamental fairness requires instruction of the jury. (*Reddick*, 123 Ill. 2d at 198, 526 N.E.2d at 147.) Instruction to the jury on the elements of an offense is essential to a fair trial, and the failure to give such instruction constitutes grave error when, viewing the record as a whole, it appears that the jury was not apprised of the State's burden of proof, and, therefore, the waiver rule does not apply. (*Reddick*, 123 Ill. 2d at 198, 526 N.E.2d at 147; see also *People v. Ogunsola* (1981), 87 Ill. 2d 216, 222-23, 429 N.E.2d 861.) Here, defendant argues that an essential element of forgery, as charged in the information and contained in the forgery statute, is that the forged instrument is apparently capable of defrauding another.

Section 17—3(a)(1) of the Illinois Criminal Code of 1961 states:

"Sec. 17—3. Forgery. (a) A person commits forgery when, with intent to defraud, he knowingly:

(1) Makes or alters *any document apparently capable of defrauding another* in such manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority

\*\*\*." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 17–3(a)(1).

■■ ■ The appellate court has held that it is an element of the offense of forgery that the document made or altered be apparently capable of defrauding another. (*People v. Toolen* (1983), 116 Ill. App. 3d 632, 654, 451 N.E.2d 1364; *People v. Tarkowski* (1982), 106 Ill. App. 3d 597, 601, 435 N.E.2d 1339; *People v. Kent* (1976), 40 Ill. App. 3d 256, 261, 350 N.E.2d 890.) Here, the information, in pertinent part, charges that defendant "with the intent to defraud, knowingly made a document apparently capable of defrauding another." However, neither the instruction defining the offense of forgery nor the issues instruction listing the elements of the offense on which the State had the burden of proof contained the element that the document was apparently capable of defrauding another. Accordingly, because the trial court did not instruct the jury regarding the element that the document was apparently capable of defrauding another and the jury was not otherwise so informed by the court or counsel, this constitutes grave error, and defendant was denied a fair trial.

The State relies, however, on *People v. Kent* (1976), 40 Ill. App. 3d 256, 350 N.E.2d 890, where the appellate court found that, although the trial court refused to instruct on the element that the document was apparently capable of defrauding another, any possible error was harmless because the jury found the defendant guilty of delivery of a forged check, which by implication indicated the document was apparently capable of defrauding. *Kent* is distinguishable from the instant case, as in *Kent* the defendant was charged with delivery of a forged instrument, not making the check as in the instant case. More importantly, recent Illinois Supreme Court cases have held that certain instructions such as the instruction setting forth the elements of the offense are essential to a fair trial and the failure to give such an instruction constitutes grave error (see, *e.g., People v. Reddick* (1988), 123 Ill. 2d 184, 198-99, 526 N.E.2d 141; *People v. Ogunsola* (1981), 87 Ill. 2d 216, 222-23, 429 N.E.2d 861), which we find control over the decision in *Kent*.

Finally, we note that the most recent version of the IPI Criminal Jury Instructions defines forgery, in part, as:

"A person commits the offense of forgery when he, with intent to defraud, knowingly

[1] makes or alters a _____ *apparently capable of defrauding* so that it appears to have been made [(by another) (at another time) (with different provisions) (by authority of one who did not give such authority)]." (Emphasis added.) (Illinois

Pattern Jury Instructions, Criminal, No. 13.25 (2d ed. Supp. 1987).)

The issues instruction further states:

"To sustain the charge of forgery, the State must prove the following propositions:

*First*: That the defendant knowingly made or altered a _____ so that it appeared to have been made [(by another) (at another time) (with different provisions) (by authority of one who did not give such authority)]; and

*Second*: That the defendant did so with intent to defraud _____; and

*Third*: That the _____ was *apparently capable of defrauding*.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." (Emphasis added.) (Illinois Pattern Jury Instructions, Criminal, No. 13.26 (2d ed. Supp. 1987).)

The language "apparently capable of defrauding" was not contained in the prior version of these instructions and was apparently added in response to *People v. Kent* (1976), 40 Ill. App. 3d 256, 350 N.E.2d 890. (See Illinois Pattern Jury Instructions, Criminal, Nos. 13.25, 13.26, Committee Note (2d ed. Supp. 1987).) Understandably, the trial judge did not instruct on this element, as the IPI issues instruction for forgery then in existence did not contain this element as a part of the State's burden of proof. Nevertheless, the forgery statute and existing case law clearly indicate that one of the elements of forgery by making is that the check was apparently capable of defrauding another and provide the basis for instruction on this issue even before the recent supplement to the IPI Criminal Jury Instructions.

Although this error is a basis for reversal of the forgery conviction and remandment for a new trial, we must also examine defendant's contentions that he was not proved guilty beyond a reasonable doubt. (See *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366.) Defendant maintains that the State failed to prove him guilty beyond a reasonable doubt of forgery because the check, which does not include a payee, is not an instrument apparently capable of defrauding another. Specifically, defendant argues the check in this case was not apparently capable of defrauding another because without a

payee's name it lacked legal efficacy or the capacity to affect the rights of another. The State responds that the check was apparently capable of defrauding another because a reasonable and ordinary person might be deceived into accepting it as a true and genuine document even though it did not have the name of the payee on it.

Section 17—3(c) states in pertinent part:

"A document apparently capable of defrauding another includes, *but is not limited to,* one by which any right, obligation or power with reference to any person or property may be created, transferred, altered, or terminated." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 17—3(c).)

The test of whether a forged instrument is apparently capable of defrauding another is whether a reasonable or ordinary person might be deceived into accepting the document as genuine. (*People v. Bokuniewicz* (1987), 160 Ill. App. 3d 270, 274, 513 N.E.2d 138; *People v. Tarkowski* (1982), 106 Ill. App. 3d 597, 601, 435 N.E.2d 1339.) An instrument need not be in "due legal form" or so skillfully prepared that it requires an expert to detect the forgery to be found capable of defrauding another. *Tarkowski,* 106 Ill. App. 3d at 601, 435 N.E.2d at 1343.

Here, the only part of the check that was incomplete was the name of the payee. Defendant completed the date, signature, and amount portions of the check. Such an instrument may be capable of deceiving an ordinary and reasonable person into accepting it as genuine, if so found by the trier of fact. For instance, it is common knowledge that under some circumstances checks are accepted that have the payee portion blank, which will be then filled out or stamped by the person receiving the check. Thus, there was sufficient evidence for the jury to find that the check made out for $265 and signed "William R. Oldham" was apparently capable of defrauding an ordinary and reasonable person even though the payee portion remained blank.

Defendant relies on *People v. Nickols* (1945), 391 Ill. 565, 63 N.E.2d 759, and *People v. Moats* (1972), 8 Ill. App. 3d 944, 291 N.E.2d 285. Both of those cases, however, addressed the sufficiency of the charging instrument. In *Nickols,* the supreme court found the indictment to be deficient because the purport clause stated that defendant had committed a forgery by making a check payable to a specific person, but the tenor clause, which set forth the check, did not name a payee. (*Nickols,* 391 Ill. at 568-70, 63 N.E.2d at 761-62.) The court emphasized that the purport and tenor clauses were inconsistent in that the purport clause set forth that defendant made a check payable to a specific person, whereas the tenor clause did not

specify a payee nor did it constitute a check. Thus, the court held that the indictment was fatally flawed because of the inconsistencies between the tenor and purport clauses. *Nickols*, 391 Ill. at 570, 63 N.E.2d at 761.

In *Moats*, the information failed to set forth a payee or an amount in the purport clause and did not contain a tenor clause description. (*Moats*, 8 Ill. App. 3d at 945, 291 N.E.2d at 286.) The court addressed the issue of whether such an instrument was apparently capable of defrauding another. In concluding that the information did not properly charge an offense, the court relied, in part, on the *Nickols* court's definition of a check. (*Moats*, 8 Ill. App. 3d at 946, 291 N.E.2d at 287.) Such reliance, however, is misplaced because in *Nickols* the purport clause used the word "check" and, therefore, the tenor clause, to be consistent, must have set forth a check as well. Therefore, in *Nickols*, the fact that the tenor clause failed to set forth a check resulted in a legally deficient indictment not because the forged instrument was not a check, but rather, because the purport clause used such terminology and, therefore, the tenor clause also needed to set forth a check. *Nickols* does not stand for the proposition, as *Moats* and the defendant here suggest, that an instrument that does not name a payee is not apparently capable of defrauding another.

Additionally, the information in *Moats* failed to set forth any language regarding a "document apparently capable of defrauding another" which the appellate court found to be insufficient in terms of the statutory language. (*Moats*, 8 Ill. App. 3d at 947, 291 N.E.2d at 288.) Furthermore, the purport clause in *Moats* failed to set forth not only a payee, but also an amount. As such, the forged instrument is less likely to deceive a reasonable and ordinary person into believing it is genuine. Thus, *Moats* is also distinguishable from the present case in those respects.

■ Defendant also contends that his forgery conviction should be reversed because the State failed to prove beyond a reasonable doubt that the forged check was made in Du Page County. It is well established that the charge that a crime was committed in a particular county is a material averment and must be proved beyond a reasonable doubt to sustain a conviction. (*People v. Pride* (1959), 16 Ill. 2d 82, 86, 156 N.E.2d 551.) Venue may be proved by circumstantial evidence, and if, from the facts appearing in evidence, the only rational conclusion which can be drawn is that the offense was committed in the county alleged, it is sufficient. *People v. Mowry* (1955), 6 Ill. 2d 132, 139-40, 126 N.E.2d 683.

Here, the undisputed evidence testified to by Foote, the limousine

driver, was that all the events of that evening occurred within Du Page County. Defendant was picked up in Du Page County at approximately 8 p.m. on November 26, 1986, and left off at his home in Du Page County at approximately 3:30 a.m. on November 27, 1986. Additionally, although the check was not found in defendant's possession, it was found near where the police first encountered defendant at Route 59 and Joliet Road in Du Page County. It is undisputed that the check was in defendant's handwriting, was dated November 27, 1986, and was in an amount sufficient to pay for defendant's limousine charges, which defendant had earlier said he would pay for by check.

██ The only rational conclusion from this uncontroverted evidence is that defendant made the check out while riding with Foote throughout the hours immediately preceding the encounter with the police in the late evening hours on November 26 or early morning hours on November 27 while defendant was in Du Page County. Further, defendant's home is in Du Page County, and there is no evidence that defendant made the check in another county, as in *People v. Smith* (1980), 91 Ill. App. 3d 242, 414 N.E.2d 751, relied on by defendant, where the defendant therein was charged with making a forged prescription originating in a hospital in another State and dated two days prior to its delivery in a county in Illinois, and where the defendant gave a statement that the prescription had been filled out at the Missouri hospital before he received it. Unlike *Smith*, where the appellate court found insufficient evidence to prove venue, the State's uncontroverted evidence here sufficiently establishes venue in Du Page County.

██ Because the case must be remanded for a new trial on the forgery offense, we will address only those other issues raised which may recur upon retrial. Defendant contends that it was error not to instruct the jury, as he requested, that the State must prove venue. The jury must be instructed that the State is required to prove beyond a reasonable doubt that each element of the charged offense occurred in the county in which the crime was alleged to have been committed if the evidence raises a question of the propriety of venue. (*People v. Chaney* (1987), 157 Ill. App. 3d 552, 563, 510 N.E.2d 997; *People v. McClain* (1978), 60 Ill. App. 3d 320, 322, 376 N.E.2d 774.) There is no need to so instruct the jury, however, where venue was not a controverted issue in this case. (*People v. Anderson* (1934), 355 Ill. 289, 303, 189 N.E. 338.) Here, the evidence in the record before us is uncontroverted. Defendant offered no evidence that the check was made anywhere other than in Du Page County, nor did defendant

challenge the testimony of Foote. On retrial, the trial court, applying the law set forth above, should determine if defendant has offered any evidence to controvert the State's evidence as to venue should defendant again seek an instruction which would include that the State must prove venue in Du Page County.

● Defendant also contends that it was error to allow Foote to testify about a conversation he had with a radio dispatcher who advised Foote that the credit card was bad. Defendant submits that this conversation was inadmissible hearsay evidence. Hearsay is defined as testimony of an out-of-court statement offered to establish the truth of the matter asserted therein, and resting for its value upon the credibility of the out-of-court asserter. (*People v. Rogers* (1980), 81 Ill. 2d 571, 577, 411 N.E.2d 223.) Where evidence is offered for an independent purpose other than establishing the truth of the matter asserted, it is not hearsay. (*Thornton v. University Civil Service Merit Board* (1987), 154 Ill. App. 3d 1016, 1021, 507 N.E.2d 1262.) If an out-of-court statement is introduced for the purpose of explaining an actor's conduct, and not for the purpose of establishing the truth or falsity of the statement, it does not constitute hearsay. (*People v. Pirrello* (1988), 166 Ill. App. 3d 614, 618-19, 520 N.E.2d 399; see M. Graham, Cleary & Graham's Handbook of Illinois Evidence §801.5, at 516 (4th ed. 1984).) Here, the testimony explained why Foote stopped when he observed a police car and is admissible provided the jurors are instructed as to the limited purpose of the evidence and that they are not to consider the truth or falsity of the statement. See *Pirrello*, 166 Ill. App. 3d at 619, 520 N.E.2d at 403; *People v. Canity* (1981), 100 Ill. App. 3d 135, 150-51, 426 N.E.2d 591.

Defendant further contends that it was error for the trial court to prohibit him from testifying to a conversation he had with William Oldham a day after the offense. The defendant sought to testify that he told Oldham that he had run into problems with the credit card and checks Oldham had given him and that Oldham had told him not to worry about it that he would take care of it, that he had insurance on the credit card, and Oldham gave him more checks. The prosecutor's objection, on the ground that the later conversation was irrelevant to consent at the time of the use of the card, was sustained.

■ ■ A defendant is entitled to all reasonable opportunities to present exculpatory evidence (*People v. Reese* (1984), 121 Ill. App. 3d 977, 988, 460 N.E.2d 446); however, a trial court may reject offered evidence on grounds of relevancy. (*People v. Ward* (1984), 101 Ill. 2d 443, 455, 463 N.E.2d 696.) The test of whether evidence is relevant, and therefore admissible, is whether it tends to make the question of

guilt more or less probable. (*Ward*, 101 Ill. 2d at 455, 463 N.E.2d at 702.) Evidence may be rejected as irrelevant if it has little probative value due to its remoteness, uncertainty, or possible unfair prejudicial nature. (*Ward*, 101 Ill. 2d at 455, 463 N.E.2d at 702.) The admission of evidence is within the sound discretion of the trial court and should not be reversed absent a clear showing of abuse of that discretion. (*Ward*, 101 Ill. 2d at 455-56, 463 N.E.2d at 702.) We believe this evidence was relevant to the defense that defendant had consent to use the credit card and check and, therefore, on retrial should be admitted.

The other issues raised either will not recur or are problematic, depending on what occurs on retrial, such that we need not address them in this opinion.

For the foregoing reasons, the judgment of conviction of forgery is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

McLAREN and WOODWARD, JJ., concur.