THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BOBBIE CARR, Defendant-Appellant.

First District (3rd Division)   No. 1—89—1192

Opinion filed January 29, 1992.

Randolph N. Stone, Public Defender, of Chicago (Kim L. Sorrells and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Peter J. Faraci, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant Bobbie Carr was convicted of forgery (Ill. Rev. Stat. 1985, ch. 38, par. 17—3) in a jury trial and sentenced to 10 years' imprisonment. On appeal, defendant contends that (1) the case should be remanded for an evidentiary hearing because the trial court denied her the opportunity to present a *prima facie* showing of purposeful discrimination by the prosecutor in jury selection pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712; (2) the prosecutor improperly exercised peremptory challenges against venirepersons solely on the basis of race in violation of the equal protection clause of the fourteenth amendment; (3) the trial court improperly allowed the jury to hear testimony and references regarding her involvement in other unrelated crimes; and (4) the State failed to prove beyond a reasonable doubt that defendant had the requisite intent to defraud and guilty knowledge necessary to sustain a conviction for forgery. We affirm.

At approximately 1 p.m. on September 10, 1987, defendant entered the Midlothian State Bank located at 14300 Cicero Avenue, Crestwood, Illinois. Defendant identified herself as Dawn Kane and presented an endorsed check in the amount of $900 made payable to Dawn Kane drawn on the fictitious account of Oneltrium Building Company from the drawee bank Amalgamated Trust and Savings Bank (Amalgamated). The teller, Diane Udoni, was acquainted with a bank customer named Dawn Kane and immediately became suspicious. Udoni asked defendant for identification, and defendant presented a fabricated photo employment identification card which contained the name Dawn Kane, but was embossed with defendant's picture. Udoni checked to see if the bank had another customer named Dawn Kane. No other such account existed. Udoni informed her immediate supervisor, Laura McElligott, that she did not believe that defendant was Dawn Kane. McElligott contacted Amalgamated to see if the check drawn on the account was legitimate. Amalgamated informed her that the account had been closed in May 1976. Udoni turned on a hidden camera installed at the teller's window, which took as many as 15 photographs of defendant. Two of the photos of defendant were introduced into evidence.

Perceiving that there were problems with cashing the check, defendant walked away from the teller's window and exited the bank, leaving the check and the photo identification card at the teller's window. Both Udoni and McElligott followed defendant out of the building. Defendant began to run. Both employees gave chase, but were unable to catch defendant.

Udoni and McElligott identified defendant from an array of photographs assembled by local police, the Illinois State Police, the United States postal service and the FBI, and an arrest warrant was issued for her arrest. Udoni and McElligott subsequently identified defendant in a lineup as the person who presented the forged check to the Midlothian State Bank. A jury convicted defendant of forgery (Ill. Rev. Stat. 1985, ch. 38, par. 17—3), and the trial court sentenced defendant to 10 years' imprisonment. This appeal followed.

■ Defendant first argues that the case should be remanded for an evidentiary hearing because the trial court denied her the opportunity to present a *prima facie* showing of purposeful discrimination by the prosecutor in jury selection pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. Defendant argues that because the trial court was mistaken about the requirements of *Batson*, the record is insufficient for this court to evaluate the *Batson* issue. In the present case, the record demonstrates that

defendant was allowed to make a complete submission to the trial court to establish a *prima facie* showing of purposeful discrimination. We, therefore, conclude that the record is sufficient to evaluate whether defendant made a *prima facie* showing of purposeful discrimination.

Defendant next argues that the prosecutor improperly exercised peremptory challenges against venirepersons solely on the basis of race in violation of the equal protection clause of the fourteenth amendment. We disagree.

In order to prevail on a claim of unconstitutional discrimination in the exercise of peremptory challenges, a defendant must establish a *prima facie* showing of purposeful discrimination. (*Batson v. Kentucky* (1986), 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723; *People v. Jackson* (1991), 145 Ill. 2d 43, 99, 582 N.E.2d 125, 151.) Once a defendant makes a *prima facie* showing of discrimination, the burden shifts to the State to come forward with a clear and reasonably specific explanation of its legitimate reasons for exercising the challenges on black jurors related to the particular case to be tried. *Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1724; *People v. Harris* (1989), 129 Ill. 2d 123, 174, 544 N.E.2d 357, 379.

A *prima facie* showing of purposeful discrimination is established if the defendant can prove by a preponderance of the evidence that (1) the prosecutor exercised peremptory challenges to remove venirepersons of a cognizable racial group; and (2) the facts and any other "relevant circumstances" raise an inference that the prosecutor peremptorily challenged venirepersons on account of their race. (*People v. Edwards* (1991), 144 Ill. 2d 108, 151-53, 579 N.E.2d 336, 353-54 (applying the standards set forth in *Batson* and recently modified in *Powers v. Ohio* (1991), 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (which held that a defendant and the excluded juror are no longer required to be members of the same cognizable racial group in order to establish a *prima facie* showing of purposeful discrimination)).) Examples of "relevant circumstances" include (1) a pattern of strikes against black veniremembers; (2) a disproportionate use of strikes against such members; (3) whether the excluded jurors were a heterogeneous group sharing race as their only common characteristic; (4) the level of black representation in the venire as compared to the jury; (5) the prosecutorial questions and statements during *voir dire* and while exercising challenges; and (6) the races of defendant and victim or of defendant and witnesses. *People v. Garrett* (1990), 139 Ill. 2d 189, 203, 564 N.E.2d 784, 791.

174

■ None of these recognized relevant circumstances are evident in the record before us to raise even an inference that the prosecutor peremptorily challenged veniremembers on account of their race. The record does not indicate that the prosecutor exercised a disproportionate number of peremptory challenges to exclude blacks from the petit jury or that there was a pattern of strikes against black venirepersons. The State exercised four peremptory challenges in the present case, two of which were exercised against black veniremembers. Defense counsel stated that it understood the reason that the State exercised the first of its four peremptory challenges against black veniremember Samuel Smith, a recovering alcoholic who had twice been convicted of possession of a concealed weapon and had served time in the Illinois Department of Corrections, based on his answers to the trial court's questioning during *voir dire*. Thus, the prosecutor used only one of the other three peremptory challenges it exercised to remove a black person from the venire.

Defendant can point to nothing in the record which suggests even the possibility of racial motivation in the prosecutor's exercise of its peremptory challenges. The fact that a prosecutor exercises a peremptory challenge against a black veniremember does not, without more, demonstrate that the prosecutor engaged in purposeful discrimination in the selection of a jury. (See *People v. Evans* (1988), 125 Ill. 2d 50, 64, 530 N.E.2d 1360, 1365.) We, therefore, conclude that defendant failed to establish a *prima facie* showing of purposeful discrimination in the prosecutor's selection of the petit jury. Accordingly, it was unnecessary for the State to offer a race-neutral explanation for the exercise of its peremptory challenges.

■ Defendant next argues that the trial court improperly allowed the jury to hear testimony and references regarding her involvement in other unrelated crimes. We disagree.

Defendant first contends that the prosecutor made impermissible references during his opening and closing statements about defendant's alleged involvement in a scheme to defraud banks which prejudiced the jury and affected its verdict. During his opening statement, the prosecutor stated:

> "And I believe that you will hear a great deal of evidence which will point, which will indicate, this defendant, Bobbie Carr, presented a check without authority, with intent to defraud the State Bank of Midlothian on the date of September 10, 1987. Now this was—I also submit to you, ladies and gentlemen, that the evidence in this case will show you that this case was a scam. *This was a scheme that Bobbie Carr was involved*

*in in order to make money at the expense of the State Bank of Midlothian."* (Emphasis added.)

These comments were essentially repeated during the prosecutor's closing statement. Defendant argues that the prosecutor improperly implied to the jury that defendant was part of a large plan to defraud banks, but failed to produce evidence at trial demonstrating defendant's involvement in this alleged scheme. This contention is without merit.

Black's Law Dictionary defines "scheme" as a plan reasonably calculated to deceive persons of ordinary prudence and comprehension. (Black's Law Dictionary 1206 (5th ed. 1979).) The State produced evidence at trial that defendant presented a check containing a forged endorsement and a fabricated work identification card to the Midlothian State Bank, that the check was created from a stolen check-writing machine and drawn on an account which had been closed for over 11 years. Additionally, the record reveals that when defendant perceived that there was a problem with cashing the check, she left the check and work identification card at the teller's window and fled. Clearly, a reasonable inference can be drawn from the evidence presented at trial that defendant was engaged in a plan reasonably calculated to deceive persons of ordinary prudence and comprehension. Accordingly, we conclude that the prosecutor's references to a "scheme" to make money at the expense of Midlothian State Bank were substantiated by the evidence.

Defendant next contends that Officer Kevin McAuliffe's testimony at trial regarding similar checks being cashed in the same manner in the Chicago vicinity improperly referred to defendant's involvement in other unrelated crimes. This contention is also without merit.

At trial, Officer McAuliffe testified that he met with officers from various Federal and State investigative agencies and departments in reference to problems with similar checks being cashed in the same manner in the Chicago vicinity. We conclude that Officer McAuliffe's statement does not refer to defendant's involvement or participation in any other crimes, but rather merely indicates the procedure by which the police department undertook the investigation of this crime and the circumstances leading to the identification and apprehension of defendant. Officer McAuliffe neither implied nor inferred that defendant had anything to do with the other fraudulent checks being cashed in the Chicago vicinity, or that defendant was involved in a massive crime wave that required the joint efforts of Federal, State and local law enforcement agencies. Officer McAuliffe stated only that he met with detectives from other law enforcement departments and

agencies during his investigation of this crime. Accordingly, Officer McAuliffe's testimony at trial regarding similar checks being cashed in the same manner did not improperly refer to defendant's involvement in other unrelated crimes.

■ Defendant next contends that Officer McAuliffe improperly suggested at trial that defendant had a criminal background. Defendant argues that Officer McAuliffe's testimony regarding the receipt of defendant's photograph from the United States postal service improperly implied to the jury that defendant had a criminal history. This contention is also without merit.

It is well established that when identification is a material issue at trial, testimony regarding the use of mug shots in an investigation may be introduced to show how a defendant was initially linked to the commission of the offense. (*People v. Arman* (1989), 131 Ill. 2d 115, 123, 545 N.E.2d 658, 662.) In the present case, defense counsel stated in his opening argument to the jury: "This is a matter of what is known as mistaken identification." Accordingly, because identification is a material issue in the present case, we conclude that Officer McAuliffe's testimony that he received defendant's mug shot from the United States postal service was used for the purpose of explaining defendant's initial linkage to the crime, not to imply to the jury that defendant committed other unrelated criminal acts. See *People v. Warmack* (1980), 83 Ill. 2d 112, 128, 413 N.E.2d 1254, 1262.

■ Defendant's final argument is that the State failed to prove beyond a reasonable doubt that defendant had the requisite intent to defraud and guilty knowledge necessary to sustain a conviction for forgery. We disagree.

In order to obtain a conviction for forgery, the State must prove beyond a reasonable doubt that a person, with intent to defraud, knowingly makes, alters, issues, delivers, or possesses with intent to deliver, a document apparently capable of defrauding another in such a manner that it purports to have been made by another. (Ill. Rev. Stat. 1985, ch. 38, par. 17—3; *People v. Turner* (1989), 179 Ill. App. 3d 510, 515-16, 534 N.E.2d 179, 183.) Intent to defraud may be inferred from the facts and circumstances surrounding the transaction, and if the forged document is delivered, then this intent will be presumed. *People v. Lighthall* (1988), 175 Ill. App. 3d 700, 706, 530 N.E.2d 81, 84-85; *People v. Varellas* (1985), 138 Ill. App. 3d 820, 826, 486 N.E.2d 388, 393.

In the present case, defendant's intent to knowingly deliver a forged document can be inferred from the facts and circumstances surrounding the transaction. Defendant presented a check containing

the forged endorsement of Dawn Kane and a fabricated work identification card to the Midlothian State Bank, created from a stolen check-writing machine and drawn on an account which had been closed for over 11 years. Moreover, when it appeared that there was a problem with cashing the check, defendant left the check and work identification card at the teller's window and fled. We, therefore, conclude from the facts and circumstances surrounding the transaction that the State proved beyond a reasonable doubt that defendant had the requisite intent to defraud and guilty knowledge necessary to sustain a conviction for forgery.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

GREIMAN, P.J., and CERDA, J., concur.